Saad, P.J.
We decide this case on remand from our Supreme Court. Previously, we held that a storm water service charge the city of Lansing imposed on certain property owners was not a tax subject to the requirements of the Headlee Amendment,[1] but rather a user fee. Bolt v Lansing, 221 Mich App 79; 561 NW2d 423 (1997). Our Supreme Court reversed and held that the service charge was, in fact, a tax, and that Lansing Ordinance No. 925 was therefore unconstitutional under the Headlee Amendment. 459 Mich *40 152; 587 NW2d 264 (1998). We now consider further issues as required by the Supreme Court’s remand.
I. NATURE OF THE CASE
When plaintiff filed this Headlee suit on March 4, 1996, he did not seek monetary relief or ask this Court to order a refund of all taxes already paid by other taxpayers. Nor did plaintiff ask to represent other parties. After plaintiff lost his suit in this Court, and while appealing his case to the Michigan Supreme Court, he did not seek to amend his complaint to request damages or to represent others. Only after plaintiff prevailed in the Supreme Court, on December 28, 1998, did he first ask for damages on behalf of other taxpayers. Accordingly, we must respond to his belated request for refunds for others.
If plaintiff desired his lawsuit to achieve not only declarative relief invalidating the Lansing storm water service charge, but also monetary relief for those taxpayers who, unlike plaintiff, had already paid the tax, he could have easily structured his lawsuit to attain these ends. Plaintiff could have requested the court, under our joinder rules, to add as a party plaintiff a taxpayer who had paid the charge. MCR 2.206. This taxpayer could have sought to act as a class representative to seek refunds or damages for the class of taxpayers who had paid the charge. MCR 3.501. Plaintiff failed to take any of these fundamental measures, though they are nothing more than standard procedures for obtaining relief for a large class of allegedly injured parties. Plaintiff claims, and the dissent agrees, that requiring plaintiff to follow normal rules of court that everyone else must follow in every other type of action would be onerous and would under *41 mine Headlee.[2] We not only disagree with the dissent, we believe adopting this view would set dangerous precedent.
Instead of utilizing available procedures for obtaining relief for a class of persons, plaintiff waited more than two and a half years, after two appellate courts acted on this litigation, to assert for the first time that he wishes to represent others and seek damages, .not merely injunctive relief. Were we to accept plaintiffs argument, any litigant who sought neither damages nor representative status could wait until after he prevailed in his action to ask for additional relief for additional parties. This is not how our system works. If a plaintiff wants to represent others, he must ask the court permission to do so; if a plaintiff wants a certain type of relief, he must say so in his pleadings.
Having failed to pursue this action as he should have, plaintiff now says, and the dissent agrees, that if we refuse his postvictory request for damages for others then we gut Headlee. This argument is akin to a complaint that a court is “unsympathetic” if it rejects an action brought after the expiration of the statute of limitations. It is plaintiffs failure to prosecute his case effectively that leads to the result here, nothing more. It is not our decision here that precludes damages for others, but plaintiffs failure to follow the requirement of the Michigan Court Rules to ask for damages and to sue on behalf of others.
*42 n. FACTS AND PROCEEDINGS
The Supreme Court’s decision sets forth the facts of this case in detail. 459 Mich 155-158. Briefly stated, a portion of the city of Lansing’s wastewater disposal system consists of combined sanitary and storm sewers. During periods of heavy rainfall the system often overflows and discharges storm water and untreated or partially treated sewage into the Grand River and the Red Cedar River. Federal law requires that the overflow be controlled. The city estimated that the cost of separating the combined sewers would be $176 million over approximately thirty years. In 1995, the Lansing City Council adopted Ordinance 925, which provided for the creation of a storm water enterprise fund to defray the costs of improvements to the system. The ordinance provided that the improvement program would be financed by the imposition of an annual storm water service charge on each parcel of real property in the city. The storm water service charge, popularly known as the “rain tax,” was to be calculated pursuant to a formula that attempted to estimate the rain runoff from each parcel of property.
The city began billing property owners in 1995 and established March 15, 1996, as the due date for payment of the fee. Plaintiff was billed $59.83 for his parcel of property. On March 4, 1996, plaintiff filed an original action in this Court pursuant to Const 1963, art 9, § 32, which provides in pertinent part that “[a]ny taxpayer of the state shall have standing to bring suit in the Michigan State Court of Appeals to enforce the provisions of Sections 25 through 31, inclusive, of this Article . . . .” Plaintiff sought a declaratory judgment that the storm water service *43 charge was a tax subject to the limitations of the Headlee Amendment, in particular the requirements for voter approval of a new tax set forth in Const 1963, art 9, §§ 25 and 31. Significantly for purposes of our analysis, plaintiff sought neither class action certification on behalf of all affected taxpayers nor monetary relief in the form of tax refunds. Indeed, plaintiff did not seek to represent anyone other than himself, nor did he ask for any relief other than declaratory or injunctive relief.
In a two-to-one decision, this Court held that the storm water service charge did not violate the Headlee Amendment because it constituted a fee rather than a tax. 221 Mich App 79. Our Supreme Court reversed in a four-to-three decision, holding that the storm water service charge was a tax, and not a user fee, because it lacked the necessary characteristics of a user fee. 459 Mich 161-169.
Our Supreme Court remanded the matter “for further proceedings consistent with this opinion.” Id., 170. On remand, we directed the parties to brief the following issues:
(a) the retroactivity, if any, of the application of the Supreme Court’s opinion and order of December 28, 1998;
(b) the scope of available relief, including the entitlement of any persons, whether or not party to this suit, to the refund of previously paid “rain taxes”; and
(c) the amount of attorney’s fees to be awarded plaintiff in connection with this litigation pursuant to MCL 600.308a; MSA 27A.308a [sic—MSA 27A.308(1)].
*44 Plaintiff and defendant filed briefs, and oral argument was heard. Amici curiae briefs were invited; no such briefs were filed.
in. ANALYSIS
A. RETROACTIVITY OF SUPREME COURT’S OPINION AND ORDER
Plaintiff contends that the Supreme Court’s decision should be given retroactive effect. We disagree.
Generally, a judicial decision is to be given complete retroactive effect. Syntex Laboratories v Dep’t of Treasury, 233 Mich App 286, 292; 590 NW2d 612 (1998). However, as our Supreme Court recognized in Lindsey v Harper Hosp, 455 Mich 56, 68; 564 NW2d 861 (1997), particular circumstances may warrant only prospective application:
[W]here injustice might result from full retroactivity, this Court has adopted a more flexible approach, giving holdings limited retroactive or prospective effect. This flexibility is intended to accomplish the “maximum of justice” under varied circumstances. Tebo v Havlik, 418 Mich 350, 360; 343 NW2d 181 (1984), citing Williams v Detroit, 364 Mich 231, 265-266; 111 NW2d 1 (1961).
A key consideration under Lindsey in deciding if a decision should be given prospective or retrospective application is: Did the judicial decision announce a new and unexpected rule of law, or did it merely clarify, extend, or interpret existing law? A decision should be applied prospectively if the decision overrules settled precedent or decides an issue of first impression “ ‘ “whose resolution was not clearly foreshadowed.” ’ ” Lindsey, supra, 68, quoting People v Philips, 416 Mich 63, 68; 330 NW3d 366 (1982), which *45 quoted Chevron Oil Co v Huson, 404 US 97, 106; 92 S Ct 349; 30 L Ed 2d 296 (1971). Of course, a decision regarding an issue of first impression does not necessarily require prospective application. If the decision merely provides a clarified legal interpretation without announcing a new rule of law or a change in existing law, the decision should be retroactively applied. Lindsey, supra, 68-69, citing Jahner v Dep’t of Corrections, 197 Mich App 111, 114; 495 NW2d 168 (1992).
Here, the Supreme Court’s decision announced a new and unanticipated rule of law concerning a significant public issue of first impression, i.e., whether a charge assessed to property owners to fund a federally mandated project is a user fee, or a tax subject to the Headlee Amendment requirements.[3] The Supreme Court’s resolution of this issue differs from case law addressing the user fee/tax inquiry in other contexts. Before our Supreme Court’s decision in Bolt, Michigan case law consistently distinguished taxes from fees on the basis that the former involved general collection of money whereas the latter paid for the community’s exercise of the police power in protecting the community’s health, safety, and welfare, with each payer receiving a benefit proportionate to the amount paid. Merrelli v St Clair Shores, 355 Mich 575; 96 NW2d 144 (1959). Under this test, where the amount charged proportionately correlated to the payer’s use of the service or to the benefit the payer received from the service, and where the funds col *46 lected were appropriated for the sole purpose of paying for that service, the charge was deemed a fee, and laws governing the assessment of taxes did not apply. For example, in Ripperger v Grand Rapids, 338 Mich 682; 62 NW2d 585 (1954), the city’s utility charge for water and sewage service was deemed a user fee, because the charge proportionately related to residents’ use of these services. Accordingly, the city did not have to comply with tax assessment procedures when residents did not pay the charge; the city could simply cut off water and sewage services until the fee was paid. In contrast, in Merrelli, supra, the Court held that the city’s building license fees were really an improper tax because they were disproportionate to their related administrative costs.
Additionally, under previous case law, the storm water service charge would have been considered proportionate to plaintiff’s use. In Detroit Water & Sewage Dep’t v Michigan, 803 F2d 1411 (CA 6, 1986), the Sixth Circuit Court of Appeals utilized this proportionality test in a case bearing pertinent similarities to the facts here. The city of Detroit, in order to comply with the Federal Water Pollution Control Act, 33 USC 1251 et seq., implemented a user charge system to pay for the treatment of runoff storm water pursuant to a settlement with the Environmental Protection Agency. 803 F2d 1412-1414. The State Department of Transportation, like plaintiff here, maintained that it received no benefit from the treatment of storm water that ran off its road, because it had no control over this runoff. Id., 1417. The Court rejected this argument, stating that the treatment of the runoff water was, in reality, a “service rendered”. Id., 1418. The Court concluded that the charge was not a tax, *47 but a fee that the city charged for a service rendered based on the reasonable cost and value of the service conferred on the individual taxpayer. Id., 1421. See also Cincinnati v United States, 153 F3d 1375 (Fed, 1998) (although the issue was not before the court, the court indicated that a city’s storm drainage service charge imposed on a federal building might not be an impermissible state tax on the federal government, but a permissible service fee).
Michigan’s approach to this issue was not unique in American jurisprudence. There was no foretoken that Michigan law on this issue would be deemed anachronistic or out of synch with the prevailing law in other jurisdictions. On the contrary, Michigan law was consistent with the laws of other jurisdictions. See Sarasota Co v Sarasota Church of Christ, Inc, 667 So 2d 180, 185-186 (Fla, 1995); Long Run Baptist Ass’n, Inc v Louisville & Jefferson Co Metropolitan Sewer Dist, 775 SW2d 520, 522 (Ky App, 1989); Teter v Clark Co, 104 Wash 2d 227, 232-233; 704 P2d 1171 (1985); Zellinger v Denver, 724 P2d 1356 (Colo, 1986).
Given the Ripperger/Merelli test and this pattern of case law, Michigan municipalities could have reasonably concluded that charges such as the storm water service charge were user fees, and not subject to Headlee Amendment requirements. However, when the Supreme Court decided plaintiff’s case, the Court replaced the Ripperger/Merelli test with a three-part test and concluded that the charge was not a user fee primarily because (1) a portion of the charge covered capital infrastructure expenditures that would outlast the thirty-year payment program and (2) one goal of the program was to address environmental concerns *48 that benefited everyone, not only the property owners. 459 Mich 165-167.
Clearly, the Supreme Court’s decision here established a different analytical framework for distinguishing user fees from a tax, one that perhaps could not have been reasonably anticipated by taxpayers or municipalities.[4] The resolution of the dispute was not clearly foreshadowed; therefore, prospective application is appropriate in this case. Lindsey, supra, 68.
Additionally, our Supreme Court recognized in Michigan Educational Employees Mut Ins Co v Morris 460 Mich 180, 189; 596 NW2d 142 (1999), quoting Chevron Oil, supra, 106-107, two additional considerations when deciding the retroactive or prospective application of a judicial decision in civil cases:
“Second, it has been stressed that ‘we must. . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.’ . . . Finally, we have weighed the inequity imposed by retroactive application, for ‘[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the “injustice or hardship” by a holding of nonretroactivity.’ [Citations omitted.]”
Here, these considerations warrant prospective application. Prospective application of the Supreme Court’s decision will serve the purpose of the Headlee Amendment by providing a new means for distin *49 guishing between user fees and taxes. We are unpersuaded by plaintiffs arguments that prospective application of the Supreme Court’s ruling will thwart the goals of the Headlee Amendment. Plaintiff protests that prospective application here will forever enable municipalities to wilfully assess and collect taxes in violation of Headlee throughout the pendency of a Headlee lawsuit, without any obligation to refund the wrongfully collected tax once the courts rule with finality that the tax was illegal. This argument is completely lacking in merit. The Supreme Court’s ruling in Bolt became the law of this state effective December 28, 1998. On that date, all municipalities were put on notice that charges such as the storm water service charge are taxes, subject to the requirements of the Headlee Amendment. Hence, all future court decisions with respect to this issue will therefore be given retroactive effect back to December 28, 1998.[5] Furthermore, with respect to concerns expressed by the dissent, we do not hold or imply that relief in Headlee cases should or will always be prospective only. Since December 28, 1998, all Michigan governments have been on notice of the Supreme Court’s decision that established a new test for distinguishing taxes from fees. Accordingly, governments, since December *50 28, 1998, are on notice of the legal difference between a tax and a fee and the consequences that follow. Therefore, any tax collected on or after December 28, 1998, that is adjudicated to be a wrongful tax under Headlee will have to be refunded, provided, of course, that persons seeking relief have acted within the statutory period of limitation.
Furthermore, we agree with defendant that retroactive application would burden defendant more than it would benefit plaintiff. Plaintiffs point of view has been vindicated: the storm water service charge has been nullified, his past refusal to pay the tax has been sanctioned, and any future obligation to pay it has been extinguished. Defendant’s thirty-year revenue program has been abolished only two years into its implementation. Further, defendant avers that it has refunded payments collected for 1998, and plaintiff does not dispute this. Accordingly, prospective application of our Supreme Court’s decision does not, in any way, impair plaintiff’s interest, and, equally important, retroactive application would not, in any way, improve his position. On the other hand, it would be unfair and unreasonable to force defendant to pay refunds to taxpayers who have never sought a refund when the money collected has already been committed in good faith to the project.[6] Washtenaw Co v State Tax Comm, 422 Mich 346, 378-379; 373 *51 NW2d 697 (1985). Indeed, if the city of Lansing were required to refund the storm water service charge collected in 1996 and 1997, in one way or another, the refund payments would ultimately have to be covered by the taxpayers. Accordingly, retroactive application of the Supreme Court’s decision would achieve nothing more than a symbolic benefit to plaintiff or any other Lansing taxpayer.
B. SCOPE OF AVAILABLE RELIEF
Because the Supreme Court’s decision has only prospective effect, defendant cannot be held liable for any storm water service charges collected before December 28, 1998. Accordingly, no taxpayer is entitled to a refund of any storm water service charge paid before that date. In LCI Int’l Telecommunications Corp v Dep’t of Commerce, 227 Mich App 196, 207; 574 NW2d 710 (1997), this Court held that the Michigan Public Service Commission improperly assessed regulatory costs on telecommunications carriers on the basis of interstate operations when the assessments should have been based only on intrastate operations. Id., 205-206. However, the Court held that the carriers were not entitled to refunds of assessments already paid because the decision had only prospective effect:
Although the statute prescribes the remedy [i.e., a refund], retroactive application of a decision and the appropriate remedy are separate issues. . . . Prospective application is preferred when overruling an established precedent or when deciding an issue of first impression whose resolution was not clearly foreshadowed. . . . [Ordering defendants to refund past assessments paid under protest would undercut the primary legislative intent underlying Act 299, *52 i.e., to require utilities to pay for the costs of regulating them, unless defendants were able to reassess all utilities for the periods in question. Even if doing so would be legally permissible, the difficulties of administration and the upsetting of settled expectations of other utilities would make this inequitable. [Id., 207-208.]
See also Fonger v Dep’t of Treasury, 193 Mich App 71, 75-76; 483 NW2d 920 (1992). (“If [a Supreme Court decision invalidating a state income tax on federal pension benefits] is to be given purely prospective application, then the question of remedy need never be reached.”) Accordingly, the prospective application of this decision precludes any refund of back taxes.
Furthermore, even if this decision were to be applied retroactively, plaintiff still would have no right in this suit to seek refunds for other taxpayers. Plaintiff, an owner of real property within the city of Lansing, filed an original action in this Court pursuant to Const 1963, art 9, § 32, seeking a declaration that Ordinance 925 was unconstitutional. Plaintiff filed suit as an individual and never sought class certification. Furthermore, plaintiffs lawsuit sought only declaratory and injunctive relief. Plaintiff did not seek a monetary refund for himself or any other taxpayer, presumably because he has never made any storm water service charge payments. If plaintiff wanted his lawsuit to result in refunds for all those who did pay the storm water service charge, the proper route would have been to file a class action pursuant to MCR 3.501.[7] Having failed to follow this route, plain *53 tiff cannot ex post facto convert his individual lawsuit to a class action.
Were we to accept plaintiff’s position, we would be compelled to deem that every individual Headlee action automatically becomes a constitutional class action, notwithstanding lack of certification, lack of notice to potential and actual class members, and lack of a request for relief for all taxpayers adversely affected by an allegedly unconstitutional tax. MCR 3.501. Neither the language of the Headlee Amendment nor that of the enabling legislation, MCL 600.308a; MSA 27A.308(1), contemplates the creation of a new breed of constitutional class action. Reviewing the language of the Headlee Amendment and implementing statutes, we find nothing that enables a plaintiff ex post facto or retroactively to make his individual lawsuit a class action seeking monetary relief for nonparties. There is simply no provision in the constitution, the statutes, or the court rules that allows plaintiff to obtain monetary relief for persons not named as plaintiffs in his lawsuit. There also is no provision that allows a plaintiff bringing an action pursuant to the Headlee Amendment to circumvent the court rules, particularly MCR 3.501, in order to obtain monetary relief for nonparties. Although individuals have “standing to enforce” the Headlee Amendment by bringing lawsuits on behalf of the public to challenge the legality of an assessment, it does not logically follow that they may seek refunds or any other form of monetary damages for nonparties without following proper procedures. Indeed, *54 plaintiff’s argument amounts to a request to dispense with all the applicable litigation rules that apply to all other litigants. This we cannot do. In sum, we find no statutory or constitutional authorization for plaintiff to seek damages on behalf of nonparty Lansing taxpayers.
Plaintiff offers numerous arguments regarding his right to bring a Headlee action, the remedies available under Headlee, and the advantages taxpayers would enjoy if plaintiff could obtain refunds for them. The thrust of these arguments is that plaintiff should not be limited to the relief sought in his complaint because this would result in the nonenforcement of the Headlee rights for the other nonparty taxpayers. Nonetheless, in Headlee actions, as in all other legal actions, a person’s ability to obtain relief is often conditioned on his compliance with relevant procedures and court rules. For example, in Taxpayers Allied for Constitutional Taxation v Wayne Co, 450 Mich 119; 537 NW2d 596 (1995), the plaintiff in a Headlee action argued that the one-year statute of limitation for seeking refunds was unconstitutional because it purportedly “destroys” taxpayers rights under the Headlee Amendment. Id., 125. The Michigan Supreme Court disagreed:
Far from destroying the right, it merely restricts the remedies available. Taxpayers may sue for a refund within one year of the date the tax was assessed. Even if taxpayers cannot obtain refunds for past tax payments exceeding the constitutional limit because they did not dispute them within one year of the date the taxes were assessed, the constitutional right does not disappear because they retain the right to prevent future violations of their rights. [Id., 125.]
*55 By analogy, requiring Headlee plaintiffs to comply with ordinary litigation procedures, including MCR 2.111(B)(2) (plaintiff must include demand for the relief sought), or the class action rule, does not restrict a plaintiffs rights under the Headlee Amendment.
Plaintiff’s emphasis on Durant v Michigan, 456 Mich 175; 566 NW2d 272 (1997), is misplaced. That case held that enforcement of the Headlee Amendment entailed refunds to taxpayers in certain circumstances. Id., 212. It did not, however, mandate refunds to all affected taxpayers every time a plaintiff successfully seeks injunctive relief from a Headlee violation.
Furthermore, compelling policy reasons strongly militate against allowing plaintiff to bring a “quasi-class action.” Class action procedures are designed for precisely this kind of case. MCR 3.501 was promulgated to address the special problems peculiar to class actions. If we were to entertain plaintiff’s argument and allow every individual Headlee action to become a de facto class action without resort to certification procedures, courts would be forced to deal with these special problems without the benefit of MCR 3.501 procedures. For example, the court rule provides that the representative party “fairly and adequately assert and protect the interests of the class.” MCR 3.501(A)(1)(d). Here, though plaintiff may not have qualified as a representative party who could adequately assert and protect the interests of the other taxpayers, because he never actually paid the storm water service charge, had plaintiff desired refunds as a remedy, he could have easily enlisted a *56 taxpayer who paid the fee to join as a party plaintiff to represent that class of litigants and could have sought class certification. Additionally, the court rule sets forth procedures for class members to opt out or intervene as they see fit. MCR 3.501(A)(3) and (4). If we accepted plaintiffs position, affected taxpayers would lose the opportunity to protect their interests by invoking these procedures. Indeed, were we to accept plaintiffs argument, it is doubtful that all the affected taxpayers would even learn of the pending lawsuit and their potential rights because the plaintiff would not be obligated to provide notice to class members as required by MCR 3.501(C).
Mindful of these considerations, at least two federal courts have decided against allowing an individual plaintiff to seek monetary damages for nonparties absent specific statutory authorization or class action certification. In Northside Realty Associates, Inc v United States, 605 F2d 1348 (CA 5, 1979), the United States Attorney General was the plaintiff in a housing discrimination action. In the course of the protracted litigation, the Attorney General obtained a civil contempt award after the defendants violated a court injunction prohibiting discriminatory housing practices. Id., 1350. However, the Attorney General appealed the civil contempt award, maintaining that the district court should have also awarded compensatory damages to nonparty victims of the defendants’ discriminatory practices. Id., 1355-1356. After concluding that such a remedy was beyond the scope of a contempt proceeding, the court discussed the policy reasons against the proposed remedy:
Even were we confident that third party compensatory relief might be a proper remedy in some civil contempt *57 cases, a number of considerations makes us ill-disposed to allow such relief in this case. Without elaboration, we mention several difficult legal questions that come to mind. By allowing the relief requested by the Government, we would in effect transform the civil contempt proceeding into a representative class action, with the Government as the representative party. This would take the action far beyond the scope of an ordinary contempt proceeding and would raise all the “class action problems”—such as certification, notice and fair representation—that such a proceeding entails. [Id., 1357 (emphasis added).]
Similarly, in United States v Beneficial Corp, 492 F Supp 682 (D NJ, 1980), aff’d 673 F2d 1302 (1981) (case table format), the court did not allow the Attorney General to seek damages for nonparties under the Equal Credit Opportunity Act.[8] The court found no express statutory authorization for the Attorney General’s damage claim and declined to find implied authorization:
In determining whether or not the Government’s right to pursue such claims should be implied, the Court considered the following self-imposed leading questions: If the Justice Department had intended that the Attorney General seek legal damages for a mass of persons not party to the suit, why did it not draft a more specific provision which would have provided for the foreseeable problems? . . .
. . . The Government cannot and should not run the gauntlet for every deprivation or interference with individual rights. There are many instances where the protection and pursuit of such rights are better left in the hands of those who hold such rights. Whether the Government carries the banner of enforcement is a policy decision for Congress and not the courts to render. [Id., 688.]
*58 We agree with both Northside Realty and Beneficial Corp that compelling policy considerations preclude a plaintiff from asserting alleged monetary damage claims for nonparticipants. Indeed, these considerations are more compelling here, where the plaintiff is not a publicly accountable government agency charged with enforcement of the law, but a private citizen.
Finally, contrary to plaintiffs contention, in declining at this late stage of this litigation to recognize plaintiff as a representative suing on behalf of all Lansing taxpayers, we do not violate the Equal Protection Clause by favoring taxpayers who refused to pay the charge over taxpayers who complied. Armco Steel Corp v Dep’t of Treasury, 419 Mich 582, 595-596; 358 NW2d 839 (1984). To the extent that there is any differential treatment of Lansing taxpayers, this difference is based on those who sought relief and those who did not.
While we find the arguments of the dissent to be thoughtful, they do not alter our conclusion. The dissent here objects to our plain language reading of the Headlee Amendment as contrary to the “common understanding” rule of constitutional interpretation. Relying on the common understanding rule, the dissent maintains we should read “standing to enforce” as “standing to enforce effectively,” and that we should “understand” that to “enforce effectively” a Headlee plaintiff must be free from the ordinary obligations of the Michigan Court Rules. We do not read the common understanding rule to permit this degree of extrapolation. We regard this interpretation as an unwarranted departure from basic litigation proce *59 dures—unwarranted by any language in the Headlee Amendment, in related legislation, or in the court rules. The dissent would excuse plaintiff from complying with the most essential procedural rules, including the requirement of naming plaintiffs or obtaining class certification, on the ground that compliance with these rules would present an obstacle to Headlee enforcement. We do not see these procedures as “obstacles,” but rather as safeguards assuring the rights of all litigants, regardless of the nature of the cause of action. Moreover, we do not see why Headlee plaintiffs as a class should be excused from the rules that apply to every other category of civil action. We can find no authority for the sort of “Headlee exceptionalism” advocated by the dissent.
Furthermore, we cannot agree that the class action rule, MCR 3.501, is inapplicable to this Court. Clearly, Rule 3.501, along with all other court rules, applies in the Court of Appeals pursuant to MCR 1.103. The dissent cites no authority for an exception to these rules, but argues instead that this Court is ill-equipped to handle a class action. However, though a class action in the Court of Appeals would be unusual, the wide range of obtainable relief under MCR 7.216 would enable this Court to make appropriate arrangements. That is, this Court could direct an appropriate circuit court to conduct a simple class certification proceeding, retaining jurisdiction, and then review the circuit court’s class certification ruling and rule on the merits. Indeed, this type of case is clearly the kind of litigation that should be pursued as a class action. This would not be burdensome. To the contrary, the principal legal issue in this case is especially suited for class treatment.
*60 Plaintiff filed this suit as an individual taxpayer seeking injunctive relief only on behalf of the public. He is not entitled to ex post facto recognition as a class representative suing for monetary relief on behalf of other taxpayers. Accordingly, we hold that defendant is not obligated to pay refunds to those other taxpayers. This result is dictated not by Headlee, but rather by plaintiffs failure to abide by simple rules mandated by the Michigan Court Rules.
ATTORNEY FEES
Const 1963, art 9, § 32 provides that a taxpayer whose suit to enforce the Headlee Amendment is “sustained” shall receive the “costs incurred in maintaining such suit.” See also MCL 600.308a(6); MSA 27A.308(1)(6). The costs allowed by Const 1963, art 9, § 32 include reasonable attorney fees. Macomb Co Taxpayers Ass’n v L'Anse Creuse Public Schools, 455 Mich 1, 8; 564 NW2d 457 (1997).
Factors to be considered when assessing the reasonableness of a requested attorney fee include (1) the skill, time, and labor involved, (2) the likelihood, if apparent to the client, that the acceptance of the employment will preclude other employment by the attorney, (3) the fee customarily charged in that locality for similar services, (4) the amount in question and the results obtained, (5) the time limitations imposed by the client or by the circumstances, (6) the nature and length of the professional relationship with the client, (7) the professional standing and experience of the attorney, and (8) whether the fee is fixed or contingent. In re Condemnation of Private Property for Hwy Purposes, 209 Mich App 336, 341-342; 530 NW2d 183 (1995); MRPC 1.5(a)(1)-(8). The *61 party claiming compensation bears the burden of proof with respect to reasonableness. In re Krueger Estate, 176 Mich App 241, 249; 438 NW2d 898 (1989). The court has discretion to determine the reasonableness of the attorney fee awarded. Jordan v Transnat’l Motors, Inc, 212 Mich App 94, 97; 537 NW2d 471 (1995).
This case presented a significant public issue of first impression and required extensive and expeditious preparation and presentation. Each of plaintiff’s attorneys charged an hourly fee commensurate with his expertise and experience in appellate practice and within the range of fees charged by attorneys who practice in the city of Lansing. Counsel worked without guarantee of any payment. Under Const 1963, art 9, § 32, had plaintiff’s suit not been “sustained,” no attorney fee would have been payable. Defendant’s assertion that the hourly fee of $280 charged by plaintiff’s more highly-paid attorney be reduced by more than $100 an hour, to $174, the average fee charged by attorneys in the city of Lansing, is without merit. No authority holds that the average fee charged by attorneys in a particular location must be deemed the only reasonable fee. Ultimately, plaintiff obtained a favorable decision. We conclude that plaintiff’s request for a total of $174,841.64 in costs and fees, while substantial, is reasonable and warranted under the particular circumstances of this case.
We decline plaintiff’s invitation to apply a discretionary multiplier to enhance the award of attorney fees. Application of such a multiplier is appropriate when the evidence shows that obtaining counsel would have been extremely difficult without the possibility of enhancement of the attorney fee. Schellen *62 berg v Rochester, Michigan, Lodge No 2225 of the Benevolent & Protective Order of Elks, 228 Mich App 20, 52-56; 577 NW2d 163 (1998). Plaintiff has made no showing that his ability to obtain competent counsel was contingent on the possibility of fee enhancement.
Hood, J., concurred.

 The Headlee Amendment, Const 1963, art 9, §§ 25-31, requires that property taxes cannot be increased above the amendment’s specified limitations without direct voter approval.

 We disagree with the dissent’s intimation that a class action is not suitable here. This is exactly the type of dispute that the class action procedure was designed to handle: a large number of allegedly aggrieved individuals with a common legal complaint, each seeking a modest amount of damages. MCR 3.501.

 As we recognized in our initial decision, 221 Mich App 86, and as our Supreme Court also acknowledged, 459 Mich 160, resolution of the issue was inordinately difficult because the Headlee Amendment does not define either the term “fee” or the term “tax.”

 While not dispositive of the retroactive application issue, the sharp splits in the Supreme Court and this Court evince the novelty of the final outcome of this controversy.

 In a somewhat convoluted argument that we find difficult to follow, plaintiff opines that given the Headlee Amendment’s one-year statute of limitation, MCL 600.308a(3); MSA 27A.308(1)(3), prospective application of the Supreme Court’s decision will preclude anyone from ever receiving a refund of taxes paid pursuant to an unconstitutional assessment. This argument fails for this reason: any taxpayer who believes he has paid an unconstitutional tax need only file a claim seeking a refund within one year of payment to protect his rights under the Headlee Amendment. The one-year statute of limitation will bar relief only to taxpayers who fail to seek relief within the year or to taxpayers who seek only ipjunctive relief in their Headlee complaints and wait too long to seek monetary relief as well.

 Plaintiff insinuates that there was a malevolent motive behind defendant’s collection of the tax throughout the pendency of plaintiff’s litigation and appeal to the Supreme Court. This spurious accusation is groundless. Defendant had the right to continue collecting the tax until a court ordered it to desist. This did not occur until the Supreme Court acted in December 1998. For obvious reasons, we cannot countenance plaintiff’s suggestion that a municipality must impose a restraining order on itself whenever a taxpayer files a Headlee action.

 Plaintiff incorrectly argues that class actions are not maintainable in this Court. MCR 1.103 provides that the “Michigan Court Rules govern *53 practice and procedure in all courts established by the constitution and laws of the State of Michigan,” therefore, MCR 3.501 applies in this Court.

 15 USC 1691 et seq.