ADAIR v MICHIGAN (ON THIRD REMAND)

Docket No. 230858. Submitted August 24, 2010, at Lansing. Decided
    November 6, 2012, at 9:15 a.m. Order referring matter to special
    master vacated, 298 Mich App 802. Reversed in part and re-
    manded, 494 Mich 852.

    Daniel Adair, the Fitzgerald Public Schools, and others brought an
        original action in the Court of Appeals against the state of
        Michigan, the Department of Education, the Department of
        Management and Budget, and the Michigan Treasurer. Plain-
        tiffs consisted of 456 Michigan public school districts and a
        taxpayer from each. Plaintiffs alleged, among other claims, that
        defendants had violated the prohibition of unfunded mandates
        (POUM) in Const 1963, art 9, § 29, part of the so-called Headlee
        Amendment, by imposing numerous recordkeeping and report-
        ing requirements on plaintiff school districts. The recordkeep-
        ing claim related to the requirements of Executive Order No.
        2000-9 and MCL 388.1752 that school districts collect, main-
        tain, and report various types of data to the Center for Educa-
        tional Performance and Information (CEPI). The Court of
        Appeals, HOLBROOK, JR., P.J., and TALBOT, J. (SAAD, J., dissenting),
        granted defendants summary disposition on all claims. 250
        Mich App 691 (2002). The Supreme Court granted plaintiffs'
        application for leave to appeal, 467 Mich 920 (2002), and
        thereafter reversed in part the judgment of the Court of
        Appeals, concluding that plaintiffs' recordkeeping claim stated
        a claim on which relief could be granted, and remanded the case
        to the Court of Appeals for further proceedings on that claim,
        470 Mich 105 (2004). On remand, the Court of Appeals, SAAD,
        P.J., and TALBOT and FORT HOOD, JJ., concluded that plaintiffs
        had not supported their claim that the CEPI requirements were
        an unfunded mandate and again granted summary disposition
        to defendants. 267 Mich App 583 (2005). Plaintiffs sought leave
        to appeal in the Supreme Court and filed a motion to disqualify
        two of the justices. The two justices denied the motion for
        recusal, 474 Mich 1027 (2006), and the Supreme Court, in lieu
        of granting plaintiffs leave to appeal, vacated the judgment of
        the Court of Appeals and remanded the case for it to reevaluate
        plaintiffs' claims under both prongs of the POUM provision in
        Const 1963, art 9, § 29: that involving the state's requiring a

new activity or service and that involving a required increase in the level of an activity or service, 474 Mich 1073 (2006). On second remand, the Court of Appeals, in an unpublished order entered April 18, 2006 (Docket No. 230858), appointed former Wayne Circuit Court Judge Pamela R. Harwood as a special master to determine the issue. She concluded that the record-keeping requirements did present an increase in the level of activity required of plaintiff school districts beyond what was previously required and thus violated Const 1963, art 9, § 29. The Court of Appeals, SAAD, C.J., and TALBOT and FORT HOOD, JJ., then adopted the special master's conclusions of law and findings of fact with some modifications and entered a declaratory judgment for plaintiffs. The Court of Appeals rejected plaintiffs' request for attorney fees under Const 1963, art 9, § 32, concluding that plaintiffs' "suit" had not been "sustained" as required by that constitutional provision. 279 Mich App 507 (2008). Plaintiffs and defendants filed separate applications for leave to appeal, and the Supreme Court granted both applications in part. 483 Mich 922 (2009). The Supreme Court limited the issues on appeal to (1) whether the prohibition of unfunded mandates in Const 1963, art 9, § 29 requires plaintiffs to prove specific costs, either through the reallocation of funds or out-of-pocket expenses, in order to establish their entitlement to a declaratory judgment and (2) whether plaintiffs are entitled to recover the "costs incurred in maintaining" the suit pursuant to Const 1963, art 9, § 32. The Supreme Court issued an opinion that answered the first question in the negative and the second question in the affirmative. The Supreme Court affirmed the declaratory judgment in favor of plaintiffs with regard to their recordkeeping claim and reversed the part of the judgment that held that plaintiffs' suit had not been sustained within the meaning of Const 1963, art 9, § 32, holding that plaintiffs were entitled to the costs incurred in maintaining the action, including an award of reasonable attorney fees incurred in litigating the recordkeeping claim only, and remanded the matter to the Court of Appeals for a determination of costs and attorney fees. 486 Mich 468 (2010). On third remand, the Court of Appeals, pursuant to the agreement of the parties, appointed A. David Baumhart, III, to serve as a special master in the matter and ordered the special master to review the reasonableness of plaintiffs' claim for costs, including attorney fees, and to conduct fact-finding. The special master conducted hearings and issued a report to which plaintiffs and defendants raised objections.

On third remand, the Court of Appeals *held*:

Plaintiffs failed to satisfy their burden of proving the number of hours reasonably expended in the litigating of their recordkeeping claim during phases I and II of this case (phase I having begun with the filing of the original complaint on November 15, 2000, and ended on June 9, 2004, when the Supreme Court issued *Adair v Michigan*, 470 Mich 105 [2004], and phase II having begun on June 9, 2004, and ended on July 14, 2010, when the Supreme Court issued *Adair v Michigan*, 486 Mich 468 [2010]). Plaintiffs were not entitled to attorney fees for phase III of the proceedings (which began on July 14, 2010, and extended through the post-judgment proceedings) because the ratifiers of the Headlee Amendment did not intend that Const 1963, art 9, § 32 authorize an award for attorney fees incurred in postjudgment proceedings. With regard to the other costs incurred in the maintenance of this suit, the special master's construction of the term "costs" was overly restrictive in light of *Macomb Co Taxpayers Ass'n v L'Anse Creuse Pub Sch*, 455 Mich 1 (1997). This narrow view of what constitutes an awardable cost under § 32 impeded the ability of the Court of Appeals to assess costs in a fair and informed manner.

1. Const 1963, art 9, § 32 is a fee-shifting provision. The Supreme Court intended that the analytical framework contained in *Smith v Khouri*, 481 Mich 519 (2008), be applied to requests for attorney fees under fee-shifting provisions. The *Smith* framework requires a trial judge to determine a baseline reasonable hourly or daily fee rate derived from reliable surveys or other credible evidence showing the fee customarily charged in the locality for similar legal services. The judge must then multiply this rate by a reasonable number of hours expended in the case. The product of this calculation serves as the starting point for calculating a reasonable attorney fee. The judge may make adjustments to the fee after considering certain factors enumerated in MRPC 1.5(a) and *Wood v DAIIE*, 413 Mich 573 (1982), and any additional relevant factors. The party requesting an award of attorney fees bears the burden of proving the reasonableness of the fees requested.

2. Plaintiffs, as the parties requesting the award of attorney fees, had the burden of supporting their attorneys' claimed hours with evidentiary support, including detailed billing records, which the state may contest with regard to reasonableness. An itemized bill of costs is insufficient by itself to establish the reasonableness of the hours claimed, and the trier of fact is not required to accept an itemized bill of costs on its face or an attorney's representation that the hours identified were reasonably expended. The fee applicant must demonstrate by documentation or specific testi-

mony, or both, that the time identified as expended on a billable item was actually and reasonably expended.

3. There was no credible evidence to support plaintiffs' allegation that the recordkeeping claim was one of three major issues pursued by plaintiffs during the early stages of this action or that their attorneys devoted 1/3 of their time to the recordkeeping claim from the date of the filing of the complaint until the Court of Appeals released its first opinion on April 23, 2002, *Adair v Michigan*, 250 Mich App 691 (2002). The proofs presented by plaintiffs were wholly inadequate to allow the Court of Appeals or the special master to determine the number of hours reasonably expended to maintain the recordkeeping claim during this portion of phase I. No attorney fees were awarded for phase I.

4. The meager evidentiary record created with regard to phase II was an impediment to a fair and informed assessment of the number of attorney hours reasonably expended during phase II. Attorney fees were also denied with regard to phase II because plaintiffs failed to carry their burden of proving the number of hours reasonably expended on the recordkeeping claim during phase II.

5. The ratifiers of the Headlee Amendment did not intend that the authority to award costs found in Const 1963, art 9, § 32 extend to postjudgment proceedings. Attorney fees were not awarded with regard to phase III, these postjudgment proceedings and those seeking to implement the declaratory judgment. The word "maintain" in § 32 reflects an intended trial orientation to § 32 and is properly defined to mean to commence, continue, and keep a suit from collapse and to prosecute the suit to achieve an effect.

6. The ruling in *Macomb Co Taxpayers* that the "costs" recoverable under § 32 are not limited to "the ordinary statutorily authorized costs" was not dicta and is binding on the Court of Appeals. Reading *Macomb Co Taxpayers* in conjunction with § 32 makes it clear that the costs awardable under § 32 are those costs incurred by the taxpayer that were necessary to the maintenance of the suit and that were reasonable. The matter of other awardable costs was again referred to the special master for the reopening of proofs and the assessment of which costs incurred by plaintiffs in phases I and II were necessary to the maintenance of the suit and reasonable. For the same reasons that plaintiffs were not entitled to an award of attorney fees incurred in phase III, they were also not entitled to an award of costs incurred during phase III.

7. The filing of the motion to disqualify two Supreme Court justices was not necessary to the litigating of the recordkeeping claim. Plaintiffs were not entitled to an award of the costs associated with the filing of the motion or with the preparation of a motion for reconsideration of the justices' decision not to recuse themselves. Likewise, plaintiffs were not entitled to recover costs associated with the preparation of a motion for reconsideration of the Supreme Court's decision in *Adair v Michigan*, 470 Mich 105 (2004), because the motion was related to plaintiffs' 20 other claims and not the recordkeeping claim.

Plaintiffs held not entitled to award of attorney fees and not entitled to award of certain costs; referred to special master.

1. TRIAL — ATTORNEY AND CLIENT — ATTORNEY-FEE AWARDS.

A party requesting an award of attorney fees bears the burden of proving the reasonableness of the fees requested; the fee applicant must demonstrate by documentation or specific testimony, or both, that the time identified as expended on a billable item was actually and reasonably expended; the trier of fact is not required to accept an itemized bill of costs on its face or to accept an attorney's representation that the hours identified in the bill of costs were reasonably expended.

2. CONSTITUTIONAL LAW — HEADLEE AMENDMENT — WORDS AND PHRASES — AWARDS OF COSTS — MAINTAIN.

The term "maintain" in the provision of the Headlee Amendment governing the costs to be awarded to a taxpayer who sustains an action to enforce the provisions of the Headlee Amendment means, in the context of such an action, to commence, continue, and keep the suit from collapsing and to prosecute the suit to achieve an effect; the phrase "costs incurred in maintaining such suit" reflects an intended trial orientation to the provision, indicating that the ratifiers of the amendment did not intend that the authority to award costs under the provision extend to postjudgment proceedings (Const 1963, art 9, § 32).

3. CONSTITUTIONAL LAW — HEADLEE AMENDMENT — ACTIONS TO ENFORCE HEADLEE AMENDMENT — COSTS.

The "costs" recoverable under the provision of the Headlee Amendment governing the costs to be awarded to a taxpayer who sustains an action to enforce the provisions of the amendment are not limited to the ordinary statutorily authorized costs; awardable costs are those costs incurred by the taxpayer that were necessary to the maintenance of the suit and were reasonable; costs incurred in postjudgment proceedings are not awardable under the provision (Const 1963, art 9, § 32).

*Secrest Wardle* (by *Dennis R. Pollard* and *Mark S. Roberts*) for plaintiffs.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Timothy J. Haynes*, Assistant Attorney General, for defendants.

ON THIRD REMAND

Before: SAAD, P.J., and TALBOT and FORT HOOD, JJ.

TALBOT, J. This original action returns on remand from our Supreme Court for a determination of costs to be awarded to plaintiffs under § 32 of the Headlee Amendment, Const 1963, art 9, § 32.[1] We referred this matter to a special master, with the consent of the parties, to review the reasonableness of plaintiffs' claim for costs, including attorney fees, and to conduct fact-finding. We have reviewed the report of the special master, the objections of the parties to that report, and the meager evidentiary record. We decline to award plaintiffs any attorney fees. Plaintiffs have failed to

---

[1] The state asserts that plaintiffs' claim for an award of costs must be dismissed because plaintiffs failed to file with this Court a timely bill of costs, as required by MCR 2.625 and MCR 7.219(B), or otherwise file a timely motion for costs. According to the state, these omissions by plaintiffs serve as a waiver of their right to recover costs under Const 1963, art 9, § 32. In *Adair v Michigan*, 486 Mich 468, 494; 785 NW2d 119 (2010), a majority of the Supreme Court clearly opined that plaintiffs "are entitled to the costs incurred in maintaining this action" and directed this Court to determine on remand the amount of costs and attorney fees to be awarded. We are duty-bound to comply strictly with our Supreme Court's mandate. *Taxpayers of Mich Against Casinos v Michigan*, 478 Mich 99, 111-112; 732 NW2d 487 (2007); *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544-545; 705 NW2d 365 (2005). We conclude that the state's procedural challenge is outside the scope of our Supreme Court's remand directive and, therefore, we decline to consider the challenge.

carry their burden of proving the number of hours reasonably expended in litigating their recordkeeping claim during phases I and II of these proceedings. Moreover, plaintiffs are not entitled to attorney fees for phase III of these proceedings, as a matter of law, because the ratifiers of the Headlee Amendment did not intend § 32 to authorize an award for attorney fees incurred in postjudgment proceedings. With regard to the other costs incurred in the maintenance of this suit, we find the special master's construction of the term "costs" to be overly restrictive in light of *Macomb Co Taxpayers Ass'n v L'Anse Creuse Pub Sch*, 455 Mich 1; 564 NW2d 457 (1997). This narrow view of what constitutes an awardable cost under § 32 impedes our ability to assess costs in a fair and informed manner and, therefore, we are compelled to return this matter to the special master for the taking of additional proofs and for a recalculation of the costs to be awarded in accordance with this opinion.

### COSTS AWARDABLE PURSUANT TO CONST 1963, ART 9, § 32

### I. REASONABLE ATTORNEY FEES

Const 1963, art 9, § 32 governs the costs to be awarded to a taxpayer who sustains an action to enforce the provisions of the Headlee Amendment. Section 32 provides:

> Any taxpayer of the state shall have standing to bring suit in the Michigan State Court of Appeals to enforce the provisions of Sections 25 through 31, inclusive, of this Article and, if the suit is sustained, shall receive from the applicable unit of government his costs incurred in maintaining such suit.

It is well established that § 32 costs include reasonable attorney fees. *Adair v Michigan*, 486 Mich 468,

494; 785 NW2d 119 (2010); *Macomb Co Taxpayers*, 455
Mich at 7-10; *Durant v Dep't of Ed (On Second Re-
mand)*, 186 Mich App 83, 118; 463 NW2d 461 (1990).
What is not so well established, however, is how the
reasonableness of those fees is to be determined in
actions to enforce the Headlee Amendment. Plaintiffs
advocate a reasonableness calculation that employs the
framework set forth in *Smith v Khouri*, 481 Mich 519;
751 NW2d 472 (2008). The state counters that *Smith*
has no application in actions to enforce the Headlee
Amendment because the intent underlying § 32 is to
provide for the reimbursement of the costs the taxpayer
incurred in maintaining the suit and not to compensate
the taxpayer at an hourly rate that the taxpayer's
attorney might otherwise command. Rather, according
to the state, we should assess whether the $175-an-hour
fee charged to plaintiffs by their attorneys reflects a
reasonable hourly rate. We believe, as did the special
master, that plaintiffs advance the more persuasive
argument.

In *Smith*, our Supreme Court fashioned a framework
to address how a trial judge is to determine reasonable
attorney fees for the purpose of awarding case evalua-
tion sanctions under MCR 2.403(O)(6)(b). *Smith*, 481
Mich at 526-530 (opinion by TAYLOR, C.J.). The Court
noted, however, that the "aim" of this framework is "to
provide a workable, objective methodology for assessing
reasonable attorney fees that Michigan courts can apply
consistently to our various fee-shifting rules and stat-
utes." *Id.* at 535. Section 32 is a fee-shifting provision.
See *id.* at 526-527. Because § 32 is a fee-shifting provi-
sion and because our Supreme Court intended the
*Smith* analytical framework to apply generally to re-
quests for attorney fees under fee-shifting provisions,
we apply the *Smith* framework to assess the reasonable-
ness of the attorney fees sought by plaintiffs. In so

doing, we note that other panels of this Court have employed prior manifestations of this reasonable-fee analytical framework when awarding costs and attorney fees in actions to enforce the Headlee Amendment. See, e.g., *Bolt v City of Lansing (On Remand)*, 238 Mich App 37, 60-62; 604 NW2d 745 (1999); *Durant v Michigan*, unpublished order of the Court of Appeals, entered January 14, 2000 (Docket No. 211740).

### A. THE *SMITH v KHOURI* FRAMEWORK

The party requesting an award of attorney fees bears the burden of proving the reasonableness of the fees requested. *Smith*, 481 Mich at 528 (opinion by TAYLOR, C.J.). *Smith* establishes an analytical framework to guide the lower courts in determining what constitutes a "reasonable fee." In general terms, the *Smith* framework requires a trial judge to determine a baseline reasonable hourly or daily fee rate derived from "reliable surveys or other credible evidence" showing the fee customarily charged in the locality for similar legal services. *Id.* at 530-531, 537. Once the trial judge has determined this hourly rate, the judge must multiply this rate by the reasonable number of hours expended in the case. The product of this calculation serves as the "starting point for calculating a reasonable attorney fee." *Id.* at 531, 537. Finally, the trial judge may make up-or-down adjustments to the fee after considering certain factors enumerated in Rule 1.5(a) of the Michigan Rules of Professional Conduct and *Wood v DAIIE*, 413 Mich 573; 321 NW2d 653 (1982), and any additional relevant factors. *Smith*, 481 Mich at 529-531, 537 (opinion by TAYLOR, C.J.).

Because we find the failure of plaintiffs' proofs with regard to the number of attorney hours reasonably expended to be dispositive of plaintiffs' claim for attor-

ney fees, we limit our discussion to this component of the framework set forth in *Smith*.

### B. REASONABLE NUMBER OF HOURS EXPENDED

Plaintiffs, as the fee applicants, bear the burden of supporting their claimed hours with evidentiary support, including detailed billing records, which the state may contest with regard to reasonableness. *Smith*, 481 Mich at 532; *Augustine v Allstate Ins Co*, 292 Mich App 408, 432; 807 NW2d 77 (2011). An itemized bill of costs by itself is insufficient to establish the reasonableness of the hours claimed. *Petterman v Haverhill Farms, Inc*, 125 Mich App 30, 33; 335 NW2d 710 (1983). Indeed, the trier of fact is not required to accept an itemized bill of costs on its face, *id.*, nor is the trier of fact required to accept an attorney's representation that the hours identified in the bill of costs were reasonably expended, *Sturgis S&L Ass'n v Italian Village, Inc*, 81 Mich App 577, 584; 265 NW2d 755 (1978); see also *Augustine*, 292 Mich App at 423. Rather, the fee applicant must demonstrate by documentation or specific testimony, or both, that the time identified as expended on a billable item was actually and reasonably expended. *Augustine*, 292 Mich App at 432-434; *Petterman*, 125 Mich App at 33.

For purposes of establishing what constitutes a reasonable number of hours expended in maintaining the recordkeeping claim, plaintiffs divided this case into three phases and presented some evidence tailored to each phase. Phase I began with the filing of plaintiffs' original complaint on November 15, 2000, and ended on June 9, 2004, with our Supreme Court issuing *Adair v Michigan*, 470 Mich 105; 680 NW2d 386 (2004), in which the Court remanded the matter to this Court to allow plaintiffs the opportunity to attempt to prove that

they were entitled to relief on the recordkeeping claim. Phase II began on June 9, 2004, and ended on July 14, 2010, with the issuance of *Adair v Michigan*, 486 Mich 468, which affirmed this Court's grant of declaratory relief in favor of plaintiffs, reversed part of this Court's judgment, and remanded this matter for entry of an award of costs, including reasonable attorney fees. Phase III began on July 14, 2010, and extends through these postjudgment proceedings.

### 1. PHASE I

Plaintiffs' exhibit 9 is a 132-page spreadsheet that serves as plaintiffs' bill of costs. Each entry on the spreadsheet identifies the date of the service provided or expense incurred, the initials of the attorney who provided the service or incurred the cost, a brief, general description of the service provided or cost incurred, the hours spent on providing the service, the amount of any cost incurred, and the total fee or cost sought for each entry. Dennis Pollard and Richard Kroopnick, attorneys for plaintiffs, candidly admitted during their respective testimony before the special master that neither could ascertain from a review of the spreadsheet which recorded costs, or portion of the recorded costs, were solely attributable to litigating the recordkeeping claim. Pollard testified that "through our invoice, we don't identify that we work so many hours or so much time on one issue versus another." Plaintiffs' attorneys did not differentiate in their own record-keeping between the recordkeeping claim and their other claims because "[w]e weren't clairvoyant enough to know that this would be an issue." Kroopnick added, "[I]t's not possible for me to sit here today and on a particular brief or particular argument to say what portion of the time was devoted to that any more than

I could say that I spent a third of the time addressing res judicata." Because the attorneys could not ascertain the time and resources devoted to the recordkeeping claim during phase I, they simply apportioned the costs incurred during phase I equally among what they perceived to be the three main issues that arose during phase I: res judicata, waiver/release, and the recordkeeping claim.

Although Pollard and Kroopnick testified that they devoted 1/3 of their time to the recordkeeping claim from the filing of plaintiffs' complaint until our Supreme Court issued its June 9, 2004, decision, our review of the pleadings filed in this Court contradicts that testimony in a starkly compelling manner.

Plaintiffs alleged that the recordkeeping claim was one of 21 claims. *Adair*, 486 Mich at 493. The brief that accompanied plaintiffs' original complaint contains barely two pages of analysis. That analysis is limited to a statement that this Court constitutes a proper forum for an action to enforce the Headlee Amendment and a more generalized statement that the state has failed to provide the funding required by Const 1963, art 9, § 29. The analysis does not refer to the recordkeeping claim or any of the other discrete claims alleged in the complaint. Moreover, plaintiffs devoted only three paragraphs of their 37-page answer to the state's initial motion for summary disposition of the recordkeeping claim. The first paragraph merely summarizes the parties' positions. The second and third paragraphs, when combined, are five sentences in length, four of which state factual allegations and one of which acknowledges plaintiffs' readiness to prove those factual allegations and, thereby, their claim. Although plaintiffs subsequently filed a supplemental answer, they used that brief to advance additional arguments in support of their positions that this suit was not

barred by waiver or release or an application of the doctrine of res judicata. Plaintiffs failed to mention the recordkeeping claim in their supplemental brief. The recordkeeping claim did not rise to prominence until this Court elevated the claim to prominence by determining in its April 2002 opinion that the claim was the only claim that survived after an application of the principles governing res judicata and release. *Adair v Michigan*, 250 Mich App 692; 651 NW2d 393 (2002). Consequently, we find no credible record evidence to support plaintiffs' claim that the recordkeeping claim was one of three major issues pursued by plaintiffs during the early stages of this action or that their attorneys devoted ⅓ of their time to the recordkeeping claim from the date of the filing of the complaint until the April 23, 2002, release of this Court's first opinion. Because there is no record evidence to support this claim and because plaintiffs' attorneys have conceded that they cannot ascertain from a review of their spreadsheet which recorded attorney hours were solely attributable to litigating the recordkeeping claim during the early portion of phase I of these proceedings, we find that the proofs presented by plaintiffs are wholly inadequate to allow us to determine the number of hours reasonably expended to maintain the recordkeeping claim during this portion of phase I.

After this Court issued its April 2002 opinion, plaintiffs petitioned our Supreme Court for leave to appeal. The Supreme Court granted leave and directed the parties to brief the following issues:

> (1) whether res judicata bars the claims of those plaintiffs who also were plaintiffs in *Durant v State of Michigan*, 456 Mich 175 [566 NW2d 272] (1997) [*Durant I*], (2) whether the claims of those plaintiffs who were not parties to *Durant I* are barred because the current plaintiff school districts released or waived their current claims by adopting resolutions that conformed to MCL 388.1611f(8), and

(3) whether the Court of Appeals erred by granting summary disposition for the defendants on the recordkeeping claim that the Court determined was not barred by either res judicata or release. [*Adair v Michigan*, 467 Mich 920 (2002).]

This order confirmed what this Court's April 2002 opinion made apparent—that plaintiffs' recordkeeping claim had risen to prominence in these proceedings. What is not apparent to us, however, is why we should accept plaintiffs' simplistic approach of allocating 1/3 of their attorneys' hours expended during the appellate proceedings in our Supreme Court to the litigation related to the recordkeeping claim. The amount of time plaintiffs' attorneys reasonably devoted to each issue in their appellate brief and during oral argument in the Supreme Court is a function of the factual and legal complexity and the novelty of each issue, not merely the number of issues raised—and yet Pollard acknowledged that "I looked at all the briefs, [but] not in any kind of detail . . . ." Plaintiffs presented no documentation or testimonial evidence from which the special master or this Court could genuinely inquire into the reasonableness of the number of hours plaintiffs expended during their appeal on the recordkeeping claim. Rather, plaintiffs would have us act as though their opinion alone satisfies plaintiffs' evidentiary burden. We decline to so act. A fair and informed assessment of the number of hours reasonably expended cannot be based on evidence that establishes nothing more than that plaintiffs claimed to have expended on the recordkeeping claim 1/3 of the hours listed.

Because plaintiffs failed to cull evidence from their litigation files and the memories of the attorneys involved in the early stages of these proceedings, they have failed to carry their burden of proving the number of hours reasonably expended on the recordkeeping

claim during phase I. We are disinclined to allow plaintiffs a second bite at the apple because plaintiffs already had the opportunity to offer proofs before the special master and instead offered conjecture contradicted by their own filings in this Court. Instead, we award no attorney fees for phase I.

### 2. PHASE II

Likewise, we find the meager evidentiary record created with regard to phase II to be an impediment to a fair and informed assessment of the number of hours reasonably expended during this phase of the proceedings. As was the case in *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 239-240; 823 NW2d 843 (2012), "during the evidentiary hearing the parties appeared to only focus on the big picture and failed to address the details of the billing as there was little questioning or challenging of the amount of time billed for particular services." Consequently, plaintiffs' proofs consisted almost entirely of the opinion testimony of Pollard and Kroopnick that the attorney hours reported in the 132-page bill of costs were both reasonable and necessary to the maintenance of the recordkeeping claim. This evidence alone is insufficient to establish the reasonableness of the hours claimed by plaintiffs. *Augustine*, 292 Mich App at 432-434; *Petterman*, 125 Mich App at 33; *Sturgis S&L*, 81 Mich App at 584. Because plaintiffs have failed to carry their burden of proving the number of hours reasonably expended on the recordkeeping claim during phase II, we also decline to award attorney fees for this phase of the proceedings.

### 3. PHASE III

Finally, we decline to award any attorney fees associated with these postjudgment proceedings or with the

postjudgment proceedings to implement the declaratory judgment. Because plaintiffs "sustained" their action to enforce the Headlee Amendment, pursuant to § 32 of the amendment, they are entitled to recoup the "costs incurred in maintaining such suit." The term "maintain" is not defined in the applicable provisions of the Headlee Amendment, Const 1963, art 9, §§ 32 and 33, or in the legislation that implements the amendment, MCL 21.231 *et seq.* In the absence of such definitional provisions, this Court must apply the rule of common understanding to ascertain the meaning of this term. *Adair*, 486 Mich at 492-493. *Random House Webster's College Dictionary* (2d ed, 1997) defines "maintain" as "to keep in existence or continuance; preserve." The online *Merriam-Webster Dictionary* defines "maintain" as "to keep in an existing state" and "preserve from failure or decline."[2] In other words, in the context of an action to enforce the Headlee Amendment, the term "maintain" means to commence, continue, and keep a suit from collapse and to prosecute the suit to achieve an effect. Understood in this manner, the phrase "costs incurred in maintaining such suit" reflects an intended trial orientation to § 32. Compare *Haliw v Sterling Hts*, 471 Mich 700, 707; 691 NW2d 753 (2005) (indicating that the language of MCR 2.403[O][1] reflects that the court rule is trial-oriented). Thus, the ratifiers of the amendment did not intend that the authority to award costs found in § 32 extend to postjudgment proceedings.

## II. OTHER REASONABLE COSTS INCURRED

Although it is well established that § 32 costs include reasonable attorney fees, the parties disagree regarding what other costs may be awarded under this section.

---

[2] <http://www.merriam-webster.com/dictionary/maintain> (accessed October 25, 2012).

Plaintiffs assert that recoverable costs under § 32 include all expenses that they actually incurred in pursuing their recordkeeping claim. The special master rejected plaintiffs' position and, instead, concluded that the costs awardable under § 32 include costs that are traditionally taxable, as well as those other costs that are reasonable and authorized by the "neutral procedural provisions"[3] of the Michigan Court Rules and the Revised Judicature Act (RJA), MCL 600.101 *et seq.* We decline to adopt either the position of plaintiffs or the analysis of the master. The former is too broad; the latter is too narrow.

Any discussion regarding what costs are to be awarded under § 32 necessarily begins with a review of *Macomb Co Taxpayers*, 455 Mich 1, wherein our Su-

---

[3] This Court has observed that although a state court awarding costs under the Magnuson-Moss Warranty Act, 15 USC 2301 *et seq.*, is authorized to award costs that otherwise are not taxable under the Revised Judicature Act, the neutral procedural rules of a state may remain applicable to those awards. *LaVene v Winnebago Indus*, 266 Mich App 470, 480 n 9; 702 NW2d 652 (2005). The Court in *LaVene* cited as support for this observation the decision of the United States Supreme Court in *Howlett ex rel Howlett v Rose*, 496 US 356, 372; 110 S Ct 2430; 110 L Ed 2d 332 (1990), wherein the Court opined that "[s]tates may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law." The Court in *LaVene* used this rule to conclude that the trial court did not err by awarding costs arising from three depositions when those depositions were filed with the court clerk and admitted into evidence as required by MCL 600.2549. We decline to take any guidance from *LaVene*. Our application of the term "costs" must be informed by the intent of those who ratified the Headlee Amendment, not principles of federal law. Moreover, the plain language of MCL 600.2549 reveals that it is a statutory provision that enumerates the prerequisites for awarding the costs associated with the taking of a deposition as taxable costs. The reliance of the special master on "neutral state rules" to limit the costs awardable in this action had the practical effect of limiting the award of costs, in some regards, to those costs awarded under the traditional notion of taxable costs as understood by the legal profession, in contravention of *Macomb Co Taxpayers*, 455 Mich at 8-10.

preme Court was tasked with determining whether attorney fees were recoverable as a cost under § 32. The Court adopted the rationale of *Durant*, 186 Mich App 83, and likewise concluded that attorney fees are awardable as part of the costs allowed under Const, art 9, § 32. The *Macomb Co Taxpayers* Court elaborated further:

> The state defendants argue that we should charge the voters who enacted the Headlee Amendment with knowledge of technical details of our legal system, such as the so-called American rule (as opposed to the British rule) for awarding costs. And, according to the state defendants, "there is no basis for believing the voters intended prevailing taxpayers in Headlee litigation to receive anything other than the ordinary statutorily authorized costs." We disagree.
>
> In *Schmidt v Dep't of Ed*, 441 Mich 236, 257, n 24; 490 NW2d 584 (1992), we noted, in relevant part:
>
> "A short time after the Headlee Amendment was ratified by the voters, its drafters prepared notes reflecting their view of the amendment's intent. Although the drafters' notes are not authoritative, *Durant* [*v State Bd of Ed*, 424 Mich 364, 382 n 12; 381 NW2d 662 (1985)], they are one piece of evidence concerning the common understanding of the voters' intent."
>
> The drafters' note relative to § 32 states:
>
> "By costs, the drafters meant all expenses incurred in maintaining such suit, including, but not limited to filing fees, service fees, witness fees, discovery expenses, attorney fees and reasonable reimbursement for plaintiffs' time and travel. [Shaker, Drafters' Notes—Tax Limitation Amendment (Taxpayers United Research Inst, 1979), § 32, p 19.]"
>
> We think this "one piece of evidence" weighs in favor of our conclusion that the voters who ratified the Headlee Amendment understood the word "costs" in its more common meaning of "all expenses," rather than the limited, technical use of the word as a legal term of art.

> We find further support for our conclusion that the
> voters who enacted the Headlee Amendment did not un-
> derstand the word "costs" in the same sense that lawyers
> understand that word by the fact that the word "costs" is
> used elsewhere in the Headlee Amendment in a context
> that precludes the technical interpretation urged on us by
> the state defendants. Const 1963, art 9, § 29 provides, in
> relevant part: "The state is hereby prohibited from reduc-
> ing the state financed proportion of the necessary costs of
> any existing activity or service required of units of Local
> Government by state law." The sense of the word "costs" in
> this sentence is synonymous with the phrase "expenses"
> (or "total expenditures"). Furthermore, § 29 also states:
> "The provision of this section shall not apply to costs
> incurred pursuant to Article VI, Section 18." Article 6, § 18
> deals with the salaries of justices and judges of Michigan
> state courts, one of the "costs" incurred in the mainte-
> nance of our judicial system. This more common usage of
> the word "costs" leads us to conclude that the common
> understanding of the people in enacting the Headlee
> Amendment was that "costs" would include all expenses
> arising from the conduct of litigation under the Headlee
> Amendment. [*Macomb Co Taxpayers*, 455 Mich at 8-10.]

As plaintiffs correctly observe, the special master erro-
neously concluded that "the *Macomb County* Court's
observations concerning 'all costs' or 'actual costs' are
*dicta.*" "[D]ictum is a ' "judicial comment made during
the course of delivering a judicial opinion, but one that is
unnecessary to the decision in the case and therefore not
precedential (though it may be considered persua-
sive)." ' " *Carr v City of Lansing*, 259 Mich App 376,
383-384; 674 NW2d 168 (2003) (citations omitted). One of
the issues before our Supreme Court in *Macomb Co
Taxpayers* was whether attorney fees were awardable as
"costs" under Const, art 9, § 32. The Court necessarily
had to determine what the voters understood the term
"costs" to mean in order to determine whether attorney
fees fell within the ambit of the term. Under such circum-

stances, the Court's discussion of what constitutes a cost allowable under § 32 was necessary to the Court's decision. The discussion was not dicta. Therefore, we are bound by the *Macomb Co Taxpayers* Court's ruling that the "costs" recoverable under § 32 are not just limited to "the ordinary statutorily authorized costs." *Macomb Co Taxpayers*, 455 Mich at 8 (quotation marks omitted).

With regard to what costs may be reimbursable in this case, we note that the Court in *Macomb Co Taxpayers* referred to as examples of costs awardable under § 32 both costs traditionally taxable under the RJA as well as costs otherwise not taxable under the RJA. Compare *Macomb Co Taxpayers*, 455 Mich at 9, with MCL 600.2401 *et seq.* and MCL 600.2501 *et seq.* The Court also recognized a reasonableness component to the costs awarded. *Macomb Co Taxpayers*, 455 Mich at 8-9 (noting that costs under § 32 include a reasonable attorney fee and reasonable reimbursement for a plaintiff's time and travel). When *Macomb Co Taxpayers* is read in conjunction with the § 32 mandate that the taxpayer receive "his costs incurred in maintaining such suit," it becomes clear that the costs awardable under § 32 are those costs "incurred" by the taxpayer that were necessary to the maintenance of the suit and reasonable. Determining costs in this manner furthers the intent underlying § 32 because it ensures that the average taxpayer is provided with the financial wherewithal to "withstand the financial obligation incurred as a result of exercising that taxpayer's right to bring suit." *Durant*, 186 Mich App at 118.

In the light of the foregoing, we again refer the matter of other awardable costs to the special master for the reopening of proofs and an assessment of which costs incurred by plaintiffs in phases I and II of these proceedings were necessary to the maintenance of the suit and reasonable. For the same reasons that plain-

tiffs are not entitled to an award of attorney fees incurred in phase III, they are also not entitled to an award of other costs incurred during that phase.

### III. SPECIFIC COSTS

Plaintiffs seek to recover the actual costs associated with the preparation and filing of a motion to disqualify two justices of our Supreme Court on the ground that their respective spouses were employed by opposing counsel. Those justices declined to recuse themselves. *Adair v Michigan*, 474 Mich 1073 (2006). Plaintiffs assert that the filing of the motion was reasonable and necessary to sustaining plaintiffs' recordkeeping claim. We conclude, however, that the motion to disqualify the justices was not necessary to the litigating of the recordkeeping claim as shown by the fact that plaintiffs were able to keep their suit from collapsing and prosecute their suit to a result despite the denial of the motion. Thus, we conclude that plaintiffs are not entitled to an award of the costs associated with the filing of the motion to disqualify or those associated with the preparation of a motion for reconsideration of the decision of the justices not to recuse themselves, especially given that the motion for reconsideration was never filed.

Likewise, plaintiffs are not entitled to recover the costs associated with the preparation of a motion for reconsideration of our Supreme Court's first decision. The motion was related to plaintiffs' 20 other claims and not the maintenance of the recordkeeping claim.

Referred to the special master.* We retain jurisdiction.

SAAD, P.J., and FORT HOOD, JJ., concurred with TALBOT, J.

---

*Order referring matter to special master subsequently vacated, 298 Mich App 802.—REPORTER.