BAILEY *v.* GROVER.

1. CONTRACTS—CONSIDERATION—OPTION GIVEN WITHOUT CONSIDERATION VOID—VENDOR AND PURCHASER.

An option to purchase land, given without consideration, is a *nudum pactum*, and unenforceable as a contract.

2. SAME—VENDOR AND PURCHASER—OPTION ONLY AN OFFER NOT A CONTRACT TO SELL.

An option is not a contract of purchase, but is simply a contract by which the owner of property agrees with another that he shall have a right to buy it at a fixed price within a specified time; it being only an offer.

3. SAME—ACCEPTANCE OF OPTION MUST BE IN STRICT COMPLIANCE WITH TERMS.

Acceptance of an option must be in strict compliance with the terms proposed, both as to the exact thing offered and within the time specified; otherwise the right is lost.

4. SAME—TENDER.

In order to protect the optionee's rights, in the absence of any agreement, it would be his duty to make legal tender to the optionors or their agents of the money and papers required by the option before it expired.

5. SAME.

Where the optionee never sent the money or papers to optionors' bank, as agreed, but sent them to another bank with instructions to forward them, which it failed to do, there was no sufficient tender to protect the optionee's rights.

6. HUSBAND AND WIFE—ESTATES BY ENTIRETIES.

Where land is held by the entireties, neither husband nor wife may alienate or incumber the title as against the other.

7. SPECIFIC PERFORMANCE—OPTIONS—CONTRACTS—FAILURE TO COMPLY WITH TERMS.

Where the terms of an option to purchase land were not

---

[1]Vendor and Purchaser, 39 Cyc. p. 1234; 27 R. C. L. 338; 4 R. C. L. Supp. 1757; [2]Contracts, 13 C. J. § 183; Vendor and Purchaser, 39 Cyc. pp. 1232, 1237; [3]Id., 39 Cyc. pp. 1238, 1239, 1241; [4]Id., 39 Cyc. p. 1239; [5]Id., 39 Cyc. p. 1239; [6]Husband and Wife, 30 C. J. § 102; [7]Specific Performance, 39 Cyc. pp. 697, 703.

complied with by the optionee, he is not entitled to a decree for specific performance.

Appeal from Oceana; Barton (Joseph), J. Submitted June 8, 1926. (Docket No. 2.) Decided April 1, 1927.

Bill by Homer O. Bailey against William F. Grover and another for specific performance of an optional land contract. From a decree for plaintiff, defendants appeal. Reversed, and bill dismissed.

*Macdonald & Macdonald,* for plaintiff.

*A. S. Hinds,* for defendants.

STEERE, J. The defendants appeal from a decree granting plaintiff specific performance of an option for the purchase of some lake shore land located in Benona township, Oceana county, Michigan. Plaintiff lived in Muskegon, and defendants in Oceana county apparently not far from the village of Shelby. At the time the option was given nothing was paid down on it. It reads as follows:

"Benona, Mich., Oceana Co., 11/19/24.
"For value received, we hereby give an option to H. O. Bailey, of Muskegon, Mich., for the purchase of our property located in Benona Township, Oceana Co., Mich., and described as follows: Lot 3, Sec. 31, Benona Township, Oceana Co., Mich. Price $4,000.00 Four Thousand. Two Thousand Cash. Balance, mortgage to run for period of five yrs., on or before, at 6%. This option to run for a period of 60 days from the above date. Above price net to us.
          (Signed)    "W. F. GROVER,
                    "ELIZABETH B. GROVER."

It is agreed that by its terms this option expired January 19, 1925. Plaintiff testified that on January 14, 1925, he notified defendant William Grover by tele-

phone that he was ready to close the deal and in reply to his inquiry Grover told him he had an abstract which he would furnish; that on January 15, 1925, he saw Mr. Churchill, a banker of Shelby in Oceana county, who was his old schoolmate and whom Grover said was handling his business, and placed $50 with him, stating what it was for and taking his receipt which reads as follows:

"Shelby, Mich., January 15, 1925.

"Received of H. O. Bailey of Muskegon, fifty dollars in cash to apply on the option given Nov. 19, 1924, by W. F. Grover and Elizabeth B. Grover, covering Lot 3, Sec. 31, Benona Twp., you to notify Mr. Grover. $50.00.

(Signed)    "CHURCHILL & WEBBER, C. L. C."

This receipt was typewritten, and at the bottom of a carbon copy put in evidence appears the following written with a pen:

"Jany. 16, 1925.    C and W— Get tax history and have abst brot down to date.    Use what you need and I will pay you.

"W. F. GROVER."

On the margin also appears:

"Ordered abst.    Jany. 16, 1925."

Plaintiff further testified that on January 15, 1925, he called Grover by telephone, told him he had paid $50 earnest money to protect his option, that he would take the property and as soon as an abstract and tax history were furnished and approved he would place the money in the National Lumberman's Bank at Muskegon and have it forwarded to Grover's bank at Shelby, to which Grover replied that was all right. He thought he received the abstract on January 18th or 19th, and had them (abstract and tax history) examined "around the 20th," after which the money was placed in his Muskegon bank with mortgage for de-

ferred payments signed by himself and wife and they were forwarded to Shelby.

It is also claimed by plaintiff and admitted by the defense that at this time the roads in the vicinity of Shelby were almost impassable because of storms. Plaintiff assigns this as reason for claimed delays on the part of defendants and his own resulting delays. The abstract and tax record were brought down to date and furnished to plaintiff, as he states, somewhere about January 19, 1925.

Grover testified that the first he heard from plaintiff after the option was given on November 19, 1924, was on January 16, 1925, when plaintiff called him up by telephone from Shelby and said he had made up his mind to take the land himself, to which Grover replied: "All right." Grover went to Shelby the next morning and had the deed drawn up, first asking Mr. Churchill if the money had been left with him, to which he smilingly replied that $50 had been left. He then gave Churchill the abstract with the tax history to bring down to date and the extension was made so that the papers came back on Saturday afternoon, January 17th, and the following Monday plaintiff called him by telephone from Muskegon and asked for a couple of weeks' extension of time on the option to which Grover replied in the negative saying that he needed the money right away.

Plaintiff admitted, on cross-examination, that in their telephone conversation he asked for delay and Grover declined, stating that he was figuring on purchasing some other property and wanted to close the deal up at once, and plaintiff told him his money would be waiting for him at his bank when the deed was produced. Asked on cross-examination:

"Q. Now, as a matter of fact, Mr. Bailey, isn't it a fact that that $1,950 check or draft you have been talking about, was never actually forwarded to the Shelby bank, or to Churchill and Webber, at Shelby?

"*A.* No, sir.  It was absolutely forwarded to Churchill and Webber about the time I went to Florida, which I think was around the 22d or 23d, something like that."

Later, on cross-examination after a recess, he was asked and answered as follows:

"*Q.* You know now, do you not, that the $1,950 was never sent to Churchill and Webber's bank by your bank?

"*A.* I believe it was not."

Churchill, who was called as a witness by plaintiff, testified that the latter called at his place of business after closing hours on January 15th, and left $50 with him for Grover, to apply on an option for purchase of some land.  He talked with Grover about it the next day and carried out his instructions.  On receiving the abstract and tax record brought down to date he mailed them at once, probably sent them to plaintiff about the 19th.  He later received a letter dated January 21, 1925, from the National Lumberman's Bank stating it held plaintiff's $1,950 to be paid on the deal when the deed, or papers, were sent to it.  He had prepared a deed of the property from Grover and his wife to Bailey and his wife, which Grover took for execution, returned with it properly executed and made a proffer of same before Churchill had received any word from the Muskegon bank, and said of the situation:

"Mr. Grover wanted to know whether his money was there.  I told him I had received nothing but the $50.00.  I have never received any money from Mr. Bailey, or from any one purporting to be Mr. Bailey's agent, upon this deal, except that $50."

Asked by the court what was done with the $50, he said:

"It was to be in our vault until such time as they were ready to fulfill the deal.  I paid for the abstract

and tax history and whatever expense was incurred, out of my own pocket, not out of that.    I tried to give the $50 to Mr. Bailey at one time, but he wouldn't take it.    He wanted Mr. Grover to take it.    It hung around a long time, so I finally mailed him a draft for it.    Our books show he didn't cash it, though."

Grover testified that he took the executed deed to Churchill at Shelby on January 21, 1925, and asked if the money was there, to which Churchill replied he had not heard from Bailey or anything more about the matter.    He was then willing to take the money and deliver the deed, although the option had expired, as he needed money at that-time, but when he could not get his money as promised, he put the deed in his pocket and went home and refused to further recognize the option.

It is admitted, also, that the note and mortgage executed by plaintiff and his wife for the deferred payments under the option were never delivered to Churchill's bank and that there never was a tender either by cashier's check or otherwise of the $1,950 either to Grover, his wife or Churchill or his bank.

Of this transaction the trial judge said in his opinion, in part, as follows:

"It appears to the court from the testimony recited, that the option gave this plaintiff all the time up to January 19th, at midnight, to perform under this contract.    It appears that as early as January 15th he decided to act under the option.    All diligence was used up to the time of the refusal of the defendants to perform.    The important bit of testimony, as the court sees it, which convinces the court that this $50 was accepted by the defendants herein knowingly, and with the intention to appropriate a portion of it to their own use, which is the acceptance of the money because of the language of the acceptance, which he has written at the bottom of this paper, at the foot of this receipt, giving instructions to Churchill and Webber.    *   *   *   Now the court feels that all diligence has been used and that the fact that the option

had expired was an afterthought, that he had agreed impliedly by his language and instructions here to 'use what you need and I will pay you' was an appropriation of that $50 to his own use, although he never actually got it, and therefore the plaintiff has made out a case, and there will be a decree of specific performance in this case."

Plaintiff's arguments in this court for affirmance are along the lines of the views expressed by the trial court. We are not highly impressed by plaintiff's proof of diligence, nor do we discover any overwhelming equities in his favor carrying the transaction beyond his strict legal rights.

The property in question belonged to Grover and his wife as tenants by entireties. Plaintiff personally secured this 60-day option from them on November 19, 1924. So far as shown he never saw either of them again until his return from Florida the following spring. He did nothing in relation to the option until 5 days before it expired. He paid nothing for it when he obtained it. It was a *nudum pactum* and unenforceable as a contract because without consideration, at least until he gave Churchill the $50 shortly before it expired. There was nothing in the option requiring or recognizing such payment. Whatever Grover's notions about it were, Churchill simply held it during the life of the option, and sent plaintiff a cashier's bank check for it after he had both failed to comply with his oral promises and with the terms of his option within its time limit. If of any legal effect, the deposit of the $50 with Churchill at that time was a consideration for the unexpired option.

An option is not a contract of purchase, it is simply a contract by which the owner of the property agrees with another that he shall have a right to buy the property at a fixed price within a specified time. An option is but an offer, strict compliance with the terms of which is required; acceptance must be in compliance

with the terms proposed by the option both as to the exact thing offered and within the time specified; otherwise the right is lost.    *Olson* v. *Sash,* 217 Mich. 604.

This option does not require defendants to furnish an abstract or tax history.    Plaintiff orally demanded them and that they be brought down to date.    The county seat of Oceana county was at Hart, some distance from Shelby and from where defendant lived. Conceding some delay necessarily resulted in securing those papers, it was at his instance, but after the option expired Grover was ready and willing to perform on his part had the money been sent to his bank as promised.    This had not been done at the time he presented the executed deed to Churchill's bank and offered to deliver it on compliance with the terms of the option by plaintiff.    The time of performance was fixed by the option and place of performance was fixed by plaintiff himself at Churchill's bank, where he told Grover the money and papers would be sent.    He testified that he went to Florida soon after arranging with his bank to forward the papers and money to Churchill, and said he later "found out that I had given them (his Muskegon bank) my personal check for $1,950.    They in turn was to send the money to Mr. Churchill."    Apparently his bank thereafter undertook to change the place of consummating the contract and executing papers.    That bank never sent the money or papers forward to Churchill, but after the option had expired wrote him it was holding the money and papers of plaintiff for delivery on receipt of defendants' warranty deed, etc., on receipt of which for collection, plaintiff's papers with the money would be remitted.    The testimony is undisputed that plaintiff's money and papers were never sent to the Churchill bank for delivery on receipt of defendants' deed.    On the face of the option or in absence of any agreement, to protect his rights it would be plaintiff's

duty to make legal tender to defendants or their agent of the money and papers required by the option before it expired.

But beyond those questions, the record shows that defendants had the title to this property by the entireties and the only papers signed by Mrs. Grover in the entire transaction were the option and deed, the latter presumably for delivery pursuant to the terms of the former. No consent by her, in writing or otherwise, to any change in its terms is shown. It also appears that she took no part in the transactions at the bank. We have often said that where land is held by the entireties neither husband nor wife can alienate or incumber the title as against the other. *Jacobs* v. *Miller*, 50 Mich. 119; *Naylor* v. *Minock*, 96 Mich. 182; *Hubert* v. *Traeder*, 139 Mich. 69; *Way* v. *Root*, 174 Mich. 418; *Webber* v. *Webber*, 217 Mich. 178.

Whatever else may be said in the case, we think it clear that specific performance cannot be granted. We are, therefore, constrained to reverse the case and dismiss the bill of complaint, with costs of both courts to appellants.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.