# STATE OF MICHIGAN

# COURT OF APPEALS

L J & S DEVELOPMENT, LLC,

      Plaintiff/Counter-Defendant-
      Appellee,

v

BOAR'S HEAD PROVISIONS COMPANY,
INC.,

      Defendant/Counter-Plaintiff-
      Appellant.

UNPUBLISHED
September 12, 2017

No. 332379
Ottawa Circuit Court
LC No. 13-003511-CZ

Before: TALBOT, C.J., and O'CONNELL and CAMERON, JJ.

PER CURIAM.

In this dispute over the proper execution of a lease option to purchase real property, plaintiff/counter-defendant, L J & S Development, LLC, sued defendant/counter-plaintiff, Boar's Head Provisions Company, Inc., alleging that Boar's Head failed to exercise the option and seeking declaratory relief. L J & S then moved for summary disposition under MCR 2.116(C)(10). Boar's Head counterclaimed, arguing that it complied with the option and seeking declaratory relief, and also moved for summary disposition under MCR 2.116(C)(10). The trial court granted L J & S's motion and later entered an order granting L J & S attorney fees and costs. Boar's Head appeals by right. We affirm in part, vacate in part, and remand.

## I. FACTUAL BACKGROUND

Boar's Head, a provider of delicatessen products, bought a plant in Holland, Michigan. Boar's Head later contracted with L J & S for L J & S to buy the neighboring property, build a refrigerated facility on the property, and lease the property to Boar's Head. L J & S then built a refrigerated facility on the property, including a tunnel connecting the refrigerated facility to the Boar's Head plant.

The lease included a purchase option. As described in more detail below, § 5.1 granted Boar's Head the option to purchase the "Project." The lease defined the "Project" as the "Property" "inclusive of completed Landlord's Work." The lease defined the "Property," also known as the "Premises," as the "real property located at 322 Roost Avenue, Holland, Michigan 49423." "Landlord's Work" included the "tunnel" constructed "on the Premises." The lease required Boar's Head to exercise the option during an option period. The lease set the purchase

-1-

price at "the fair market value of the Project on the date of the Option Notice . . . , as determined by an independent third (3rd) party appraiser selected by" Boar's Head.

During an option period, Boar's Head informed L J & S that it was exercising the option and that an appraiser determined the Project's fair market value. The appraisal did not consider the tunnel.

L J & S subsequently sued Boar's Head, and Boar's Head counterclaimed. Both parties sought declaratory relief regarding whether the appraisal provided the fair market value of the Project and moved for summary disposition. The trial court granted summary disposition to L J & S, concluding that the appraisal did not assess the Project's fair market value because it did not consider the tunnel.

## II. SUMMARY DISPOSITION

Boar's Head argues that the trial court erred in denying its motion for summary disposition and granting L J & S's motion. We disagree.

A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A "trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. A trial court must grant the motion if it finds "no genuine issue as to any material fact" and determines that "the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). We review a trial court's decision on a motion for summary disposition de novo. *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009).

Likewise, we review a trial court's interpretation of a contract de novo. *Id*. Courts strive to honor the parties' intent when interpreting a contract, such as a lease. See *G&A Inc v Nahra*, 204 Mich App 329, 330-331; 514 NW2d 255 (1994); *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 446; 886 NW2d 445 (2015). The contract's language provides the best evidence of intent. *Kyocera Corp*, 313 Mich App at 446. Courts read contracts as a whole, giving terms their plain and ordinary meaning, consulting a dictionary when necessary. *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). Courts must enforce an unambiguous contract as written. *Id*.

A party must accept an option to purchase real property "within the time allowed and in minute compliance with its terms." *LeBaron Homes, Inc v Pontiac Housing Fund, Inc*, 319 Mich 310, 315; 29 NW2d 704 (1947) (quotations and citation omitted). Substantial compliance is not sufficient. *Id*. at 315-316. "[S]trict compliance" is required. *Bailey v Grover*, 237 Mich 548, 554; 213 NW 137 (1927). Otherwise, the right to accept an option is "lost." *Id*. at 554-555.

In this case, Boar's Head failed to exercise the lease's purchase option because it failed to strictly comply with the option's requirement to determine the "Project's" fair market value when it submitted an appraisal with the option notice that did not include an appraisal of the tunnel.

Section 5.1 of the parties' lease grants Boar's Head "the exclusive and unconditional option to purchase the Project during the Option Period." Section 1.1 defines the "Project" as "the Property and all fixtures, improvements, appurtenances and installations located or to be located thereon during the Term hereof (inclusive of completed Landlord's Work)." The "Property," also known as the "Premises," is the "real property located at 322 Roost Avenue, Holland, Michigan 49423." Article 4 defines "Landlord's Work," in part, as including L J & S's "construction on the Premises of . . . a tunnel of approximately 2,725 square feet . . . on the Premises . . . which Plans have been approved in writing by" L J & S and Boar's Head.[1] (Emphasis removed.) Article 4.1(i) further states that L J & S "shall not deviate, or permit its contractors or agents to deviate, in any material respect from such Plans, and the Plans shall not be changed or modified, without the prior written consent of" Boar's Head. Boar's Head provided no evidence that it permitted L J & S to build the tunnel in a manner that would exclude it from being part of the Project. Therefore, the tunnel was part of the Project.

The lease further states that Boar's Head has "the right . . . to exercise the Option upon written notice to" L J & S sent during the "Option Period." (Emphasis removed.) Based on the time that Boar's Head chose to exercise the option, the lease set the "option price" at "the fair market value of the Project on the date of the Option Notice . . . as determined by an independent third (3rd) party appraiser." The lease required a "copy of such appraisal [to] be sent to" L J & S "with the Option Notice." Boar's Head agrees that the appraisal submitted with the option notice did not include the tunnel. Therefore, the appraisal did not provide the Project's fair market value, Boar's Head failed to strictly comply with the terms of the option, and Boar's Head failed to exercise the option.[2]

We reject Boar's Head's argument that special circumstances allow this Court to grant it relief from strict compliance in equity. Boar's Head must cite authority to support its argument. See MCR 7.212(C)(7). However, Boar's Head cited no binding authority. Instead, it cited the nonbinding federal case[3] *Tel-Towne Props Group v Toys "R" US-Delaware, Inc*, 630 F Supp 2d 766, 773-774 (ED Mich, 2007). The federal court concludes that "Michigan has not taken a position on equitable relief in a published opinion," "a majority of state jurisdictions" requiring strict compliance with an option "allow for equitable relief under special circumstances," and a Michigan Court would allow equitable relief because it allowed equitable relief in the nonbinding, unpublished opinion *Market Dev Corp v Village Green Props, Ltd*, unpublished opinion per curiam of the Court of Appeals, issued September 12, 2000 (Docket Nos. 208856 and 216600). *Id*. We do not find the federal case or unpublished Michigan case persuasive. Supreme Court authority states that the right to accept an option is lost absent strict compliance.

---

[1] Boar's Head's argument that the tunnel was not physically located on the Premises or Property is contrary to the plain meaning of the lease.

[2] Because Boar's Head failed to exercise the option, we reject Boar's Head's argument based on *Rosenthal v Shapiro*, 333 Mich 302, 315; 52 NW2d 859 (1952), that exercising the option automatically terminated the lease, excluding the tunnel from the Project.

[3] *Holman v Rasak*, 281 Mich App 507, 509; 761 NW2d 391 (2008), aff'd 486 Mich 429 (2010).

See, e.g., *LeBaron Homes, Inc*, 319 Mich at 315-316; *Bailey* 237 Mich at 554-555. Unlike the *Tel-Towne Props Group* and *Market DevCorp* Courts, we are not persuaded that this rule allows for equitable relief. Further, both nonbinding cases are distinguishable because they considered equitable relief for the untimely exercise of an option, which did not occur here.

We also reject Boar's Head's argument that L J & S should be equitably estopped from arguing that the appraisal did not provide the Project's fair market value because letters from L J & S's counsel induced Boar's Head to believe that L J & S had no objection to the appraisal's failure to consider the tunnel, and L J & S did not assert the defect until after the option period expired.

> Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts. [*Van v Zahorik*, 460 Mich 320, 335; 597 NW2d 15 (1999) (quotations and citation omitted).]

Boar's Head argues that the appraisal need not include the tunnel because the tunnel was not part of the Project. It provided no evidence that it acted on the belief that L J & S had no objection to the appraisal's failure to consider the tunnel and no evidence that Boar's Head will be prejudiced if L J & S is allowed to assert this alleged defect with the appraisal. For example, Boar's Head provided no evidence or argument that it would have obtained a new appraisal including the tunnel. Therefore, Boar's Head's equitable estoppel argument fails.[4] Thus, the trial court did not err in denying Boar's Head's motion for summary disposition and granting L J & S's motion.[5]

### III. ATTORNEYS' FEES AND COSTS

Next, Boar's Head argues that the trial court awarded L J & S an unreasonable amount of attorneys' fees and erred in awarding L J & S costs beyond "court costs." The trial court did not abuse its discretion in awarding attorneys' fees, but it abused its discretion in allowing L J & S to recover costs beyond "court costs."

---

[4] Because the trial court reached the correct result when it rejected Boar's Head's equitable estoppel argument, we need not consider Boar's Head's argument that the trial court inappropriately cited *Hunter Square Office Bldg, LLC v Paragon Underwriters, Inc*, unpublished opinion per curiam of the Court of Appeals, issued May 20, 2003 (Docket No. 235115), for support because we will not reverse the right result reached for the wrong reason, see *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

[5] Because resolution of these issues allows us to affirm the trial court's summary disposition order, we need not address the parties' remaining arguments concerning the trial court's summary disposition order.

"We review a trial court's award of attorney fees and costs for an abuse of discretion." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). A trial court abuses its discretion when its decision falls "outside the range of reasonable and principled outcomes." *Id.* Again, we review the trial court's interpretation of a contract de novo. *Reicher*, 283 Mich App at 664.

A contract may allow the prevailing party in a dispute to recover reasonable attorneys' fees. *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). To determine whether fees are reasonable, a trial court begins by assessing a reasonable hourly rate. See *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 229-230; 823 NW2d 843 (2012). "The reasonable hourly rate represents the fee customarily charged in the locality for similar legal services" performed by "lawyers of similar ability and experience." See *id.* at 230 (quotations and citations omitted). A trial court should consult reliable surveys or other credible evidence of the legal market. See *id.* Additionally, a trial court can consider an attorney's actual hourly billing rate because "it is reflective of competition within the community for business and typical fees demanded for similar work." See *id.* at 234. Once a reasonable hourly rate is determined, the trial court should assess the number of hours worked, excluding any excessive, redundant, or unnecessary hours. See *id.* at 229-231. Then, the trial court must multiply the reasonable hourly rate by the number of hours worked. See *id.* at 229-230. Finally, the trial court must consider additional factors to determine whether to adjust the fee. See *id.*

Boar's Head argues that the trial court assessed an unreasonable hourly rate for L J & S's attorneys because it ignored certain tables from the State Bar of Michigan's Economics of Law Practice Report. However, the trial court considered some tables in the report, including tables showing the hourly billing rates for equity partners or shareholders, hourly billing rates for firms with more than 50 attorneys, hourly billing rates for attorneys in Grand Rapids and Ottawa County, and hourly billing rates for attorneys practicing in civil litigation, commercial landlord/tenant disputes, and real estate. The trial court can determine the tables that are most relevant and helpful to assess a reasonable hourly rate. *Adair v Michigan (On Fourth Remand)*, 301 Mich App 547, 559; 836 NW2d 742 (2013). Additionally, the trial court considered the attorneys' actual hourly rate and was aware that the lawyers' hourly billing rates were generally above the average rate listed in numerous tables. However, a locality's average fee is not the only reasonable fee. *Bolt v Lansing (On Remand)*, 238 Mich App 37, 61; 604 NW2d 745 (1999). Further, attorney David Gass, an expert in law and the relevant legal market, testified that L J & S's retention of Warner Norcross & Judd LLP, a regional firm, was reasonable because of the case's complexity. Therefore, the trial court's assessment of L J & S's attorneys' hourly rates did not fall outside the range of reasonable and principled outcomes.

Next, Boar's Head argues that the trial court erred in determining a reasonable number of hours expended, identifying several hours that should not have been expended. The trial court did not abuse its discretion in assessing fees for these identified hours.

The trial court allowed L J & S to recover fees for a motion for a protective order to preclude Boar's Head from taking depositions. After the motion was filed, Boar's Head agreed to adjourn the depositions to a future, unscheduled date. Therefore, L J & S obtained the relief it

sought. L J & S's ability to do so without a trial court resolving its motion did not render the motion unnecessary.

The trial court allowed L J & S to recover some fees for time spent working on an initial motion for summary disposition. The trial court did not resolve the initial motion; it adjourned the motion. However, the trial court determined that the work required to prepare the motion aided L J & S in preparing a subsequent, resolved motion for summary disposition. Acknowledging that L J & S attorneys duplicated some tasks in preparing the motions, the trial court only awarded L J & S fees for one-half of the hours worked to prepare the initial motion.

The trial court determined that L J & S did not take unnecessary depositions. On appeal, Boar's Head fails to identify which depositions it believes were unnecessary. Michigan's "broad discovery policy" allows "liberal discovery" of any matter relevant to the case that is not privileged. *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). Thomas Amon, one of L J & S's attorneys, submitted an affidavit explaining the relevance of the deposed witnesses. Boar's Head did not cite any evidence to dispute Amon's sworn statements or argue that the deposed witnesses discussed privileged information. Therefore, the trial court's determination of the reasonable number of hours expended was not outside the range of reasonable and principled outcomes.

Finally, Boar's Head argues that the trial court erred in allowing L J & S to recover all costs and expenses incurred during the litigation pursuant to § 10.3(a)(iii) of the lease.

Section 10.3 is an indemnity provision. Indemnity refers to a "duty to make good any loss, damage, or liability incurred by another" or "[t]he right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty." *Black's Law Dictionary* (10th ed). Section 10.3(a)(iii) requires Boar's Head to indemnify L J & S as a result of Boar's Head's "negligence or willful misconduct." Section 10.3(b) requires L J & S to indemnify Boar's Head. Section 10.3(c) discusses a third party bringing an action against Boar's Head or L J & S. Specifically, § 10.3(c) provides, in part:

> If any action or proceeding asserting a claim within the scope of any indemnity set forth in this Lease is asserted against any indemnified party, then the indemnified party shall give prompt notice thereof to the indemnifying party, but in all events within a time period so as not to prejudice the indemnifying party's or its insurer's ability to defend effectively any action or proceeding brought on such claim. The Indemnifying party shall have the right to defend and control the defense of any action or proceeding brought on such claim with counsel chosen by the indemnifying party, subject to the approval of the indemnified party (such approval not to be unreasonably withheld) or by the indemnifying party's insurance company.

When reading § 10.3 as a whole, § 10.3(a)(iii) applies when a third party brings an action or proceeding against L J & S as a result of Boar's Head's negligence or willful misconduct. No third party sued L J & S. Therefore, § 10.3(a)(iii) does not apply.

Rather, only § 11.9(a) allows L J & S to recover costs. The trial court and parties agree that § 11.9(a) applies. Section 11.9(a) limits L J & S's recovery of costs to the recovery of "court costs." "Court costs" include the costs that are charged by and paid to the court, specifically "filing fees, jury fees, courthouse fees, and reporter fees." *Black's Law Dictionary* (10th ed). Therefore, we vacate the portion of the trial court's order awarding L J & S $69,367.91 in "costs and expenses" and remand for entry of an order limiting L J & S's recovery to "court costs."

We affirm in part, vacate in part, and remand. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Thomas C. Cameron