*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ALLES GROUP, LLC,

UNPUBLISHED
August 27, 2020

Plaintiff-Appellant,

v

No. 350114
Ottawa Circuit Court
LC No. 18-005584-CB

MSA II, LLC,

Defendant-Appellee.

Before: BORRELLO, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Plaintiff, Alles Group, LLC, appeals as of right the trial court's order granting summary disposition in defendant, MSA II, LLC's, favor. We reverse and remand.

Defendant's sole member, Michael Alles ("Alles"), was the owner and operator of the following two businesses: Alles Tires in Grand Haven, Michigan; and Alles Tire & Truck in Spring Lake, Michigan. Alles also owned the real properties upon which the businesses stood, albeit through separate limited liability companies; defendant is the limited liability company that owns/owned the real property in Spring Lake ("the Spring Lake property"). In August 2015, defendant (and its affiliates) entered into an agreement to sell the business assets from the two businesses to plaintiff. Under the terms of the agreement, plaintiff purchased the real property in Grand Haven and entered into a long-term lease agreement for the Spring Lake property, with a right of first refusal to purchase that Spring Lake property if the property was listed for sale. The Spring Lake property consists of 3.54 acres and includes one large finished commercial building containing three businesses, one smaller, unfinished building, and vacant land for future development.

In September 2018, defendant entered into a sales agreement with a third party, "Tool Time," with respect to the Spring Lake property, wherein Tool Time would purchase a portion of the Spring Lake property for $1.15 million. Plaintiff was provided with notice of the sales agreement and an opportunity to exercise its right of first refusal with respect to the property. In October 2018, plaintiff indicated that it would like to exercise its right of first refusal, but was advised that the sales agreement with Tool Time had been cancelled. Plaintiff nevertheless

-1-

thereafter notified defendant that it would be exercising its right of first refusal and would thus be purchasing a portion of the Spring Lake property for $1.15 million. A short time later, a new purchase agreement was drawn up for defendant to sell the property to Tool Time. The second agreement provided that the sale would be for the entirety of the Spring Lake property at a sales price of $1.5 million. A second notice of first refusal was sent to plaintiff, but plaintiff notified defendant that it had exercised and was still exercising its right of first refusal with respect to the first agreement, and that defendant was thus obligated to sell a portion of the property to plaintiff for the first agreement price of $1.15 million. Defendant disagreed and refused to close on the Spring Lake property with plaintiff.

On November 29, 2018, plaintiff initiated the instant action against defendant, seeking specific performance of plaintiff's right of first refusal regarding the sale of the Spring Lake property, as well as money damages. Plaintiff's causes of action consisted of specific performance, breach of contract, and promissory estoppel. Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), contending that both the first and second agreements with Tool Time were for cash sales, and that not only was the first sales agreement cancelled prior to plaintiff's exercise of any right of first refusal on the same, but that at no time did plaintiff make a cash offer that matched either the first or the second sales agreement. Thus, defendant asserted that there was no genuine issue of material fact that plaintiff did not properly exercise its right of first refusal and that, even if it had exercised its right of first refusal with respect to the first agreement, that agreement had already been cancelled/terminated. Plaintiff responded that summary disposition would be premature, given that discovery remained open and it was still awaiting responses to some of its discovery requests from defendant. Plaintiff also asserted that summary disposition was inappropriate, given that genuine issues of material fact remained as to whether the contract between plaintiff and defendant required plaintiff to exactly match a bona fide offer to purchase, whether there was a time frame in which plaintiff was required to exercise its right of first refusal, and whether the property was "listed for sale" as set forth in the parties' agreement. Plaintiff also asserted the existence of factual questions with respect to defendant's purportedly improper conduct relative to plaintiff's efforts to exercise its right of first refusal. The trial court agreed with defendant that plaintiff failed to properly exercise its right of first refusal and granted defendant's motion for summary disposition.

On appeal, plaintiff first asserts that the trial court erred when determining, prior to the close of discovery, that no genuine issue of material fact existed concerning whether plaintiff properly exercised its right of first refusal. We agree.

The proper interpretation of a contract is a question of law that this Court reviews de novo. *Wilkie v Auto–Owners Ins Co*, 469 Mich. 41, 47; 664 NW2d 776 (2003). We also review a trial court's decision regarding a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Bernardoni v City of Saginaw*, 499 Mich 470, 472; 886 NW2d 109 (2016). In reviewing a motion brought under this subrule, a court considers all pleadings, depositions, admissions, and other substantively admissible evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. at 472-473. "When the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. at 473, citing *Maiden*, 461 Mich at 120. Generally, a motion for summary disposition is premature if granted before discovery on

a disputed issue is complete; summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position. *Oliver v Smith*, 269 Mich App 560, 567; 715 NW2d 314 (2006).

Plaintiff's right of first refusal is set forth in the parties' 2015 contract. Paragraph 39 of the contract, entitled "Other Provisions," states that plaintiff was to execute an initial 5-year lease for the Spring Lake property for a specified monthly rental amount and that plaintiff had the right to renew the lease for two 5-year renewal terms. The right of first refusal sentence followed the above and states, in its entirety, "Buyer also entitled to first right of refusal if [the real property] is listed for sale." A separate lease for the Spring Lake property was also executed in November 2015. The lease provided for an initial 5-year lease term with the right to renew the lease for up to three[1] additional 5-year terms so long as plaintiff was not in default. The lease sets forth rental conditions and rates and provides at paragraph 7, entitled "Use," that "Tenant also has the first right of refusal if property is listed for sale." There are no other provisions in the parties' contracts that provide any different or more detailed first right of refusal.

"A right of first refusal, or preemptive right, is a conditional option to purchase dependent on the landowner's desire to sell." *Randolph v Reisig*, 272 Mich App 331, 336–37; 727 NW2d 388 (2006) (citations omitted). As stated in *In re Smith Tr*, 274 Mich App 283, 287; 731 NW2d 810 (2007):

> A right of first refusal . . . empowers its holder with a preferential right to purchase property on the same terms offered by or to a bona fide purchaser. It limits the right of the owner to dispose freely of his or her property by compelling him or her to offer it first to the party who has the first right to buy. Nor may the owner accept an offer made to him by a third party.
>
> A right of first refusal is a conditional option which is dependent upon the decision to sell the property by its owner. A right of first refusal is the weakest of options; technically, it is not an option at all, because it does not require the grantor to offer the property subject to it for sale, ever. It does create a right of preemption, and the right to receive an offer before others do. The only offer involved is one to be made in the future, if and when the property owner reaches agreement with a third-party purchaser. Once the holder of a right of first refusal receives notice of a third party's offer, the right of first refusal is transmuted into an option. At that point, the holder of the option has a right to buy the property, a right that is a true option. The right of first refusal may be extinguished where the offer is declined by the holder, or where the third-party offer is not matched. [quoting 17 CJS, Contracts, § 56, p. 503]

Here, pursuant to the parties' contract and lease, plaintiff had some type of right of first refusal, although the most basic parameters of that right are not spelled out in the parties' documents. Thus, when defendant received an offer on the Spring Lake property from Tool Time

---

[1] This differs from the parties' sales contract, which provides for a right to renew the lease for two additional 5-year terms.

-3-

in September 2018, and provided that offer to plaintiff, plaintiff's right of first refusal was triggered.

Defendant provided a "Notice of Right for First Refusal" to plaintiff[2] on September 28, 2018. On October 1, 2018, plaintiff's counsel sent a letter to defendant's real estate agent, Robert Hendrick, indicating that "Mr. Beck is likely going to exercise his option. He needs a little time to do his due diligence. He will respond in as timely of a manner as possible not later than 30 days."

Hendrick testified at his deposition that a mutual release of the agreement between Tool Time and defendant was signed by Tool Time on October 12, 2018. Hendrick further testified that on or about October 17, 2018, plaintiff's real estate agent, Christopher Peel, called and told him plaintiff was going to write an offer on the Spring Lake property and asked Hendrick if it had to be the exact offer. According to Hendrick, he told Peel that the right of first refusal no longer existed because the purchase agreement previously submitted by Tool Time had been withdrawn and was no longer valid.

Indeed, a "Mutual Release of Purchase Agreement For Commercial Property" was provided to the trial court. The document provides that Tool Time and defendant agreed to cancel the September 26, 2018 agreement for the sale of the Spring Lake property. Tool Time signed the release on October 12, 2018, and defendant, through a representative, signed the agreement on October 25, 2018. Plaintiff provided an official offer on the property, via a proposed purchase agreement, on October 19, 2018.

Setting aside the parties' dispute as to whether the mutual release was effective prior to defendant signing it (defendant having signed the release only after plaintiff submitted its offer on the property), we note that a right of first refusal "transmutes" into an option when the property owner notifies the right holder of a bona fide offer to purchase the property. *In re Smith Tr*, 274 at 287–88. An option is not revocable for the period specified in the option. *Id*. Because defendant had a specific offer for the property and plaintiff was notified of that offer, plaintiff's right of first refusal transmuted into an option. And that option was not revocable for *at least* the four days specified in the September 28, 2018 "Notice of Right for First Refusal."

The problem we are confronted with at this juncture is the lack of specificity and clarity in the right of first refusal language—particularly with regard to any timeframe in which plaintiff could exercise its option. In interpreting a contract, this Court's obligation is to determine the intent of the parties. *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). This Court looks at the language of the contract, according the words their ordinary and plain meanings and, if such meanings are apparent, the contractual language is unambiguous, requiring us to interpret and enforce the contract as written. *Id*. If contract language is clear, its construction is a question of law for the court. *G & A Inc v Nahra*, 204 Mich App 329, 330; 514 NW2d 255 (1994). If, however, the contract is subject to more than one reasonable

---

[2] As previously stated, it is unclear whether the notice was intended for plaintiff or Adam Beck. For the sake of simplicity, this Court will assume, without deciding, that all relevant documents were intended for plaintiff and will accordingly use "plaintiff" throughout this opinion.

interpretation, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. *SSC Associates Ltd Partnership v General Retirement System of the City of Detroit*, 192 Mich App 360, 363; 480 NW2d 275 (1991).

The right of first refusal in this case is ambiguous. It contains no terms whatsoever and simply sets forth that plaintiff has a right of first refusal. Determining whether a proper right of first refusal was exercised would require delving into the intent of the parties regarding the scope and terms of the right of first refusal. At the time of the summary disposition hearing, Michael Alles's deposition had not been taken and there was no evidence presented concerning plaintiff's intent with respect to the right of first refusal language. While defendant may have required plaintiff to exercise the right of first refusal within four days, there is nothing in the parties' contract setting forth a four-day time limitation. Moreover, Beck crossed out the "four days" language in the notice when signing it and further indicated (within four days) through counsel that plaintiff needed time to perform due diligence and would have a response within 30 days. It is undisputed that plaintiff officially stated that it would be exercising its right of first refusal on October 19, 2018 (via the presentation of a written offer/proposed agreement), which was within 21 days of its receipt of Tool Time and defendant's first agreement. The timeframe for plaintiff to exercise its right of first refusal, which was not set forth in the parties' contract or lease, is of key importance.

In *In re Smith Tr*, 480 Mich 19, 20; 745 NW2d 754 (2008), our Supreme Court considered whether a right of first refusal is revocable once the holder of the right receives notice of a third party's offer. In that case, the respondent property owner entered into a lease agreement concerning 75 acres of farmland with the petitioners. The lease contained a right of first refusal as follows:

> Landlord hereby grants to Tenant the option to purchase the leased premises upon the following terms:
>
> Tenant shall have the right of first refusal to match any bona fida [sic] offer to purchase made with regard to the subject property. In the event Tenant fails to exercise his option within 30 days following presentment of said bona fida [sic] offer to purchase the option herein granted shall terminate.
>
> This option to purchase shall continue through the primary term of this lease and any extensions thereof. Upon Tenant notifying Landlord in writing of his intent to exercise his option to purchase closing for said purchase shall be scheduled at a reasonable time mutually agreeable to the parties.
>
> Upon Tenant's exercising his offer to purchase, Tenant shall pay to Landlord in cash the purchase price less the deposit herein specified and less any and all rental payments made during the lease term. [*Id*. at 21-22].

The respondent received an offer to purchase the property for $225,000, and her attorney sent petitioners a letter advising them that respondent had a signed purchase agreement for that amount and that petitioners had to notify respondent of their decision whether to exercise their option within 30 days. *Id*. at 22. However, before the 30 days had elapsed, respondent's counsel again wrote to petitioners, advising that respondent had declined the original offer and was not selling

the property at that time. Four days after respondent's counsel had sent the second letter, and within the 30-day period set forth in counsel's first letter, petitioners gave written notice they would be exercising their option to purchase the property. *Id*. Respondent refused to sell the property to petitioners and petitioners filed suit seeking to compel the sale, with the trial court finding for respondent. *Id*. This Court reversed and our Supreme Court affirmed this Court.

Our Supreme Court noted that resolution of the matter involved interpretation of the parties' contract and that the plain language of the contract "demonstrates that the parties intended that when a third party made a bona fide offer to purchase the property and the respondent presented the offer to the petitioners, the petitioners had the irrevocable option to purchase the property for the purchase price within 30 days of the notice." *Id*. at 25. The Court found that respondent's counsel's first letter triggered the petitioner's right to exercise their option and purchase the property. *Id*. at 26. As a result, the respondent did not have the right to revoke her offer to sell the property to petitioners until after the [30 day] option period expired . . . . *Id*. "[S]ince the respondent could not revoke the option in the lease once she presented the bona fide offer to the petitioners, the respondent was contractually obligated to schedule a closing date to convey the property to the petitioners. Because real property is unique, and the petitioners timely exercised their option to purchase the property, specific performance is the proper remedy." *Id*. 26–27. In reaching this conclusion, the Court dismissed respondent's argument that the initial letter from her counsel and concerning the third-party offer was only an offer that could be withdrawn at any time before acceptance. *Id*. at 26.

From the above, it can be seen that the specific language of the parties' right of first refusal agreement governs whether and when, if the purchase offer from a third party has been declined (or where a mutual release from the agreement was signed), the option to purchase can be revoked. Where, as here, we have no specific timeframe in which plaintiff had to exercise its right of first refusal set forth in the parties' contract, we cannot determine whether such right was, in fact, properly and timely exercised, and thus whether the initial contract from Tool Time could be properly released. Moreover, it has long been held that when a contract is silent as to time of performance, the law will presume a reasonable time, which depends upon the specific facts and circumstances of the case. See *Pierson v Davidson*, 252 Mich 319, 324; 233 NW 329 (1930); *Duke v Miller*, 355 Mich 540, 543; 94 NW2d 819 (1959); *Smith v Mich Basic Prop Ins Ass'n,* 441 Mich 181, 191 n. 15; 490 NW2d 864 (1992). It is questionable, at best, whether the four-day period unilaterally set by defendant is a "reasonable time" in which to exercise the right of first refusal in this matter.

The parties' contract is also silent as to whether plaintiff, in exercising its right of first refusal, had to *exactly* match all terms of the third party's offer to purchase. The trial court, and defendant, cite to *Bailey v Grover*, 237 Mich 548, 554; 213 NW 137 (1927), for the proposition that the terms of an offer made pursuant to a right of first refusal must strictly comply with the terms of the offer made by a third party.

In that case, our Supreme Court reviewed the specific terms of an option contained in a contract between two parties, specifically one term requiring payment for the land at issue by a date certain. *Id*. at 553-554. It was undisputed that while the option holder made a small payment on the property within the specified time, he did not pay for the land in its entirety and that the option holder thus "failed to comply with his oral promises and with the terms of his option within

its time limit." *Id*. at 554. In rendering its decision, our Supreme Court noted that, "[a]n option is but an offer, strict compliance with the terms of which is required; acceptance must be in compliance with the terms proposed by the option both as to the exact thing offered and within the time specified; otherwise the right is lost." *Id*. at 554-555. Thus, the strict compliance is in reference to the terms of the *option*, not the terms of an offer made by the third party. Other cases cited by defendant similarly refer to the necessity of an option holder's strict compliance with the terms of the option, as stated in the parties' contract, (as opposed to a strict match of a third-party's offer) in order to have validly exercised the right of first refusal. See *Beecher v Morse*, 286 Mich 513, 516; 282 NW 226 (1938) (contractual option specified payment be made in cash or by certified check and option holder submitted a cashier's check which did not strictly comply with the specific terms of the option); *Nu-Way Serv Stations v Vandenberg Bros Oil Co*, 283 Mich 551, 553; 278 NW 683 (1938) (contractual option specified that it applied only if the owner of the property desired, at the end of lease term, to sell the property at issue and, "[p]laintiff did not desire to sell. Therefore[,] the condition under which the option might be enforced did not exist.").

Here, the primary difference between Tool Time's first offer and plaintiff's first offer was whether the purchase of the Spring Lake property would be a cash sale or a financed one. While Tool Time's offer was a cash offer and plaintiff's offer was contingent upon financing, plaintiff also provided documentation showing it had been approved for the financing and, given the terseness of the option language in this case, there is a question of fact concerning whether plaintiff must have made a cash purchase in order to validly exercise its right of first refusal. Where the parties' actions were governed by an ambiguous contract, the trial court erroneously made factual determinations to determine that summary disposition was appropriate in defendant's favor.

Again, discovery had not closed in this matter when the trial court granted summary disposition in favor of defendant. Outstanding discovery included the deposition of Alles, who was instrumental in this dispute, and who's testimony may well have shed light on the parties' intent with respect to the limited right of first refusal language in the parties' contract. Remaining discovery could also well impact the claims in this matter where the parties' contract is less then clear. The grant of summary disposition was thus premature and in error.

The trial court also, as argued by plaintiff, erroneously failed to view the evidence in a light most favorable to plaintiff, as the non-moving party, when granting summary disposition in defendant's favor. Defendant contended before the trial court, and now on appeal, that defendant and Tool Time mutually released each other from the first offer because Tool Time sought to purchase the entirety of the Spring Lake property, rather than only a portion of the property, as was set forth in the initial offer. Defendant further contends that it would have entered into an agreement with plaintiff, pursuant to its right of first refusal, to purchase a portion of the property for cash, as was set forth in the first offer. However, viewing the evidence in a light most favorable to plaintiff, there are questions of fact as to the impetus for the mutual release and as to defendant's other actions.

At his deposition, Hendrick testified that Beck and Alles have had their issues. He testified that nevertheless, if plaintiff had exercised his right of first refusal, he had full confidence that Alles would have gone forward with plaintiff. Hendrick testified that the first offer made by Tool Time was for cash and the one submitted by plaintiff was dependent on financing. Hendrick testified that if plaintiff had matched Tool Time's second offer of $1.5 million in cash, he knew

that Alles would have accepted it and sold the Spring Lake property to plaintiff. Hendrick further testified that the mutual release of the first agreement between Tool Time and defendant was signed by Tool Time on October 12, 2018, and that when he was unable to reach Alles to sign the document, he had Alles's ex-wife, who held Alles's power of attorney, sign the mutual release on October 25, 2018. Hendrick testified that the second offer from Tool Time came the same day that Alles's ex-wife signed the Mutual Release on behalf of defendant.[3]

However, Hendrick also acknowledged an email chain between he and Alles wherein he, on October 23, 2018, told Alles about the offer submitted by plaintiff and stated that Beck "knows that [Tool Time's] offer is off the table, which gives you the freedom to counter, or if [Tool Time] writes a better offer put this in a backup position but raise the terms to meet [Tool Time's]." Hendrick acknowledged that Alles responded the same day by email, stating that he had no intention of selling to Beck. Other emails indicate Alles's unwillingness to sell the Spring Lake property to plaintiff.

In an October 22, 2018, email from Alles to Tool Time, Alles stated "Like I was trying to say, I do not want to sell to Beck. If there is any way of getting the sale through with you and not getting in trouble, I will do almost anything. We may have to let the attorneys guide us . . . ." Tool Time responded the same day that it would like to offer him:

> $1,500,000.00 for the property and all buildings. I know you wanted to keep the back building. I am happy to work out a lease agreement with you for that or be creative in another direction. Adam [Beck] will currently be able to match our offer, so I thought by positioning a number he couldn't compete with would surely allow us the opportunity to make the purchase. I am paying more than I anticipated. However, I feel that is the way it goes some times . . . ."

Alles responded he would like to go forward with that offer and Tool Time indicated it would have the offer written up.

From the above, it can be seen that Alles clearly did not want to sell the property at issue to plaintiff. While defendant asserts that it and Tool Time executed the mutual release of the first offer based upon Tool Time's desire to purchase the entirety of the Spring Lake property, the above emails make clear that there was no offer for the entirety of the property from Tool Time until October 22, 2018, and there was no written agreement drawn up reflecting this offer until October 25, 2018.[4] And, plaintiff had submitted its right of first refusal on Tool Time's first offer on the property on October 19, 2018. Whether defendant was purposefully attempting to frustrate and/or avoid plaintiff's right of first refusal, as alleged by plaintiff, or whether its actions were driven by

---

[3] Alles's ex-wife testified at deposition that she did not communicate with Alles about the documents, only Hendrick and Todd Kamps, who represented Tool Time. She signed the document at the office of Todd Kamps.

[4] Notably, this was the same date that the release was signed by an agent of defendant, despite the fact that Tool Time had purportedly signed the release on October 12, 2018.

legitimate business concerns, is a question of fact given the above, and the trial court did not view the submitted evidence in a light most favorable to plaintiff when rendering its decision.

Plaintiff next contends that the trial court erred in sua sponte raising an issue of whether plaintiff's owner, Adam Beck ("Beck"), sought and had standing to enforce plaintiff's contractual right of first refusal. We agree.

MCR 2.116(I)(1) provides that "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." Under this rule, a trial court has authority to grant summary disposition sua sponte, as long as one of the two conditions in the rule is satisfied. *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). If a party was ultimately given a full opportunity to be heard on an issue raised sua sponte (through rehearing, for example) it is not inconsistent with substantial justice to allow the trial court's ruling to stand. *Boulton v Fenton Twp*, 272 Mich App 456, 464; 726 NW2d 733 (2006).

Here, the trial court undisputedly raised the issue of Beck's right to exercise the right of first refusal sua sponte. In its opinion and order granting summary disposition in defendant's favor, the trial court stated, in part:

> Adam Beck submitted an offer to purchase in his sole, individual name on October 18, 2019 [sic]. Alles Group, as a limited liability company, is an entity that is completely separate and distinct from Adam Beck, its sole member. The lease agreement containing the right of first refusal was not a contract between Beck and MSA, and there is no evidence that Beck as an individual had any right to exercise the right of first refusal held by Alles Group. [citations omitted].

The trial court is incorrect that there was no evidence that Beck could exercise the right of first refusal.

Notably, the September 28, 2018 "Notice for Right of First Refusal" (the first notice provided and governing the first sales agreement between defendant and Tool Time) prepared by defendant's representative states:

> Receipt of the fully executed BUY AND SELL agreement on [the Spring Lake property] is acknowledged by Adam Beck who has a "Right of First Refusal" on subject property.
>
> Mr. Beck is given four (4) business days in which to match the price, terms and conditions contained in the submitted BUY AND SELL. If Mr. Beck submits a Bona Fide Buy and Sell with the same price, terms and conditions, then his Agreement will take president [sic] over the original Buy and Sell. In the absence of submitting a Bona Fide matching Buy and Sell, then the Right of First Refusal becomes null and void and the Buyer and Seller of the original agreement shall proceed to fulfill the elements of the Buy and Sell Agreement.

Both Beck and Hendrick signed the notice.

The above indicates that defendant understood Beck, personally, to have a right of first refusal with respect to the property—not simply plaintiff. Alternatively, the notice could be interpreted to have granted Beck that right. While "[a]member of a limited liability company has no interest in specific limited liability company property," MCL 450.4504(2), given defendant's actions in preparing the notice in the way that it did, when combined with its other actions indicting a possible attempt to circumvent plaintiff's right of first refusal, it is unclear whether the parties distinguished the corporate entity from Beck, disregarded the corporate entity entirely, or intended to otherwise grant Beck the right to exercise a right of first refusal.

In sum, the trial court erroneously and prematurely granted summary disposition in defendant's favor. We thus reverse and remand for proceedings not inconsistent with this opinion. On remand, plaintiff should be provided a full and fair opportunity to address whether Beck could have properly invoked a right of first refusal.

Reversed and remanded. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Deborah A. Servitto